OPINION OF THE COURT
Gerald Esposito, J.
Motion by defendants pursuant to CPLR 3211 to dismiss plaintiffs’ claims alleging design defect, nuisance, consumer fraud and breach of express warranty and cross motion by plaintiffs and proposed plaintiffs-intervenors for leave to intervene are consolidated and decided as follows:
Defendants move herein to dismiss plaintiffs’ claims for design defect, nuisance, breach of express warranty and consumer fraud.
Plaintiffs Kayla Sabater, Ariel De La Rosa, Joanna De Los Santos and Genesis Duran are minors. Two of the infant plaintiffs, Kayla Sabater and Ariel De La Rosa, allege that they have ingested lead. The other plaintiffs do not allege lead ingestion.
The manufacturing defendants are nine companies which are alleged to be either former manufacturers, or their successors, of lead pigment. The defendant association is an industry trade association. It is undisputed that the manufacturing *762 defendants ceased the manufacture of white lead pigment decades ago. For example, the complaint alleges that the defendant Atlantic Richfield Company’s alleged predecessor stopped making lead pigment in 1946, and that the defendant Sherwin-Williams Company ceased its manufacture in 1947. It is conceded that any interior lead paint present in the plaintiffs’ homes was applied before 1960, at which time New York City prohibited the application of lead paint to the interiors of residences. It should be noted that the sale of interior residential lead paint was prohibited in New York City after December 31, 1959.
The manufacturing defendants were all members of the defendant Lead Industries Association at various times between 1928 and 1960. Plaintiffs maintain that the Lead Industries Association periodically reported to its members on medical studies of lead toxicity and lead poisoning.
Plaintiffs further maintain that the Lead Industries Association and its members lobbied to oppose regulations concerning lead-based paints. In addition, plaintiffs assert that the Lead Industries Association conducted studies to dispute governmental, medical and press reports of lead poisoning. Plaintiffs also claim that they advertised and promoted lead-based paint for use in residential interiors.
Plaintiffs do not allege an inherent defect in design. Rather, plaintiffs contend that all lead is hazardous to children, and consequently, all lead pigment used in interior residential paint was defective. Plaintiffs assert that despite their knowledge concerning the hazards of lead, the defendants continued to manufacture and promote the use of white lead pigment in lead-based paint until 1960. In addition, plaintiffs maintain that lead paint was advertised and promoted as appropriate for use on interior surfaces of residential dwellings. Plaintiffs further maintain that by the beginning of the twentieth century nontoxic alternatives to lead pigments were available.
The infant plaintiffs have either been diagnosed with lead poisoning or are considered at risk for same.
Kayla Sabater is currently four years old and has had blood levels of lead as high as 22 micrograms per deciliter, which is twice the level considered dangerous.
Ariel De La Rosa is currently two years old and has had blood levels of 26 micrograms per deciliter.
Genesis Duran is currently six years old. She has not been diagnosed with lead poisoning, but is considered at risk since her older brother has been.
*763 The complaint asserts a number of claims. Those relevant herein include claims for negligent product design (first cause of action), negligent failure to warn (second cause of action), strict products liability (third cause of action), fraud and misrepresentation (fourth cause of action), breach of implied warranties (ninth cause of action), breach of express warranties (tenth cause of action), nuisance (eleventh cause of action), and violation of New York’s consumer fraud statute (twelfth cause of action).
The relief sought by plaintiffs includes an order requiring defendants to provide warnings about lead paint to all persons residing in homes in New York City built before 1960, an order requiring defendants to contribute to a fund to provide medical monitoring to children six or under residing in New York City buildings containing lead paint, an order requiring defendants to contribute to a fund to abate lead paint in the homes of all children six or under in New York City and damages under New York’s consumer fraud statute for ill infants in New York City living in residences containing lead or lead paint or who have been diagnosed as suffering from lead poisoning as a result of being exposed to lead paint in the homes.
HISTORY OF LEAD PIGMENT
Lead is a nonbiodegradable element. Once entering the environment it remains until it is removed. The manufacturing defendants and their successors produced the lead pigments which were used in lead paint. Lead pigments in the form of dust can become air borne and migrate elsewhere. Lead may be poisonous and in significant levels it may result in lead poisoning.
Lead poisoning is extremely troublesome for fetuses, babies and children under the age of six since it may significantly impact upon their developing nervous systems.
It is alleged that the defendants, herein, produced lead pigments until approximately 1950. It is further alleged that the manufacturing defendants were responsible for the production of virtually all the metallic lead and lead pigments produced in this country between 1910 and 1960. Plaintiffs contend that the manufacturing defendants were vertically integrated and controlled the mining, manufacture, distribution, and promotion of lead pigments. Plaintiffs further contend that the product of one company cannot be distinguished from that of any other company.
Plaintiffs maintain that despite knowing the risks inherent in lead, the manufacturing defendants and the defendant trade *764 organization, advertised and promoted lead-based paint as appropriate for use inside residential dwellings.
MOTION TO DISMISS
Defendants move, pursuant to CPLR 3211, to dismiss a number of causes of action asserted in the plaintiffs’ complaint. Defendants seek dismissal of plaintiffs’ claims alleging design defect, nuisance, breach of express warranty and consumer fraud.
It is well established that in considering a motion to dismiss the court must accept the complaint as true and give the complaint every possible favorable inference in construing its allegations. A pleading must give notice of the event from which it arises and cover the substantial material elements that make up the particular cause of action relied upon. A complaint need not, and should not, anticipate and refute defenses. In opposing a motion to dismiss, plaintiffs have no obligation to show evidentiary facts to support the allegations in their complaint (Palmisano v Modernismo Publs., 98 AD2d 953).
Negligent Product Design — First and Third Causes of Action
Plaintiffs in their first and third causes of action allege a design defect. The defendants move to dismiss these causes of action on the grounds that plaintiffs have failed to plead and are unable to prove that there was a feasible design alternative that would have made the product safer.
A product may contain a design defect as the result of a manufacturing flaw, improper design or a failure to warn. (Sage v Fairchild-Swearingen Corp., 70 NY2d 579; Sukljian v Ross & Son Co., 69 NY2d 89.) In a cause of action alleging a design defect, the basis for the claim is that the entire product is defective. (See, Sage v Fairchild-Swearingen Corp., supra.)
To recover under a strict products liability or negligence theory for sale of a defectively designed product, it is well established that a plaintiff must plead and prove that there was a feasible design alternative that would have made the product safer. Thus, a plaintiff must establish that it was feasible to design the product in a safer manner (Voss v Black & Decker Mfg. Co., 59 NY2d 102).
In the matter at bar, the plaintiffs have failed to allege that the white lead pigment could have been designed differently. Rather, they assert that the continued use of the lead pigments was a design defect in that the lead pigments were inherently dangerous; plaintiffs contend that all lead pigment *765 is inherently dangerous and that the defendants should have produced only pigments other than lead pigment.
It has been held, however, that merely alleging that a product is inherently dangerous is insufficient to establish a design defect. (See, e.g., Forni v Ferguson, 232 AD2d 176; Landrine v Mego Corp., 95 AD2d 759.)
Plaintiffs argue, however, that failure to plead an alternative safer design is not a proper ground to attack a complaint as facially insufficient. Plaintiffs contend that a product which is so irremediably and unreasonably dangerous that it should not have been produced at all can be defective.
The court finds this argument to be unsupported by existing case law. It is well settled that to establish a claim predicated upon a design defect, plaintiffs must present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and that it was feasible to design the product in a safer manner. (Voss v Black & Decker Mfg. Co., supra.) Thus, in order to sustain a claim for design defect, it is necessary to establish an alternative safer design. In the matter at bar, plaintiffs have failed to allege a safer alternative design.
The plaintiffs further argue that application of the foregoing case law results in no liability for the most dangerous products, and is, therefore, against public policy.
Although the court finds the plaintiffs’ argument to be compelling, the court is constrained to following the ruling of the Court in Forni (supra).
In Forni (supra) the Appellate Division, First Department, considered the issues of design defect and negligence with respect to a semiautomatic handgun, ammunition and magazine which were used in an horrendous assault on passengers aboard a commuter train. Since the sale and ownership of said items were legally permitted and plaintiffs failed to satisfactorily allege the existence of a legally cognizable defect in the condition of the items in question, the Court dismissed the claims. The Court held that as a matter of law, a product’s defect is related to its condition, not its intrinsic function.
The appellate court further held that the plaintiffs could not maintain a cause of action for negligence since plaintiffs could not show that manufacturing defendants owed plaintiffs a duty of care, that the manufacturers breached their duty of care, and that the manufacturers’ breach of their duty of care was the proximate cause of plaintiffs’ injuries. The Court found *766 that there is no duty upon a manufacturer to refrain from the lawful distribution of a nondefective product.
Accordingly, plaintiffs’ first and third causes of action must be dismissed.
Breach of Express Warranty — Tenth Cause of Action
Defendants seek dismissal of the plaintiffs’ claims for breach of express warranty on the ground that they are barred by the applicable Statute of Limitations. Defendants assert that any claim against the defendants for breach of express warranty accrued at the time the defendants sold the white lead carbonate and expired six years later.*
The sale of lead interior paint was banned in New York City effective December 31, 1959. Thus, any white lead pigment in plaintiffs’ apartments must have been sold before 1960. As a result, the Statute of Limitations expired no later than 1966.
Plaintiffs’ argument that a warranty claim could not have accrued before the plaintiffs were born is without merit and their reliance upon LaBello v Albany Med. Ctr. Hosp. (85 NY2d 701) is misplaced.
In LaBello (supra), the infant plaintiff was injured in útero as a result of the alleged malpractice of the defendants. In that case the Court held that the cause of action accrued at the time of birth based upon the principles that (1) an infant plaintiff has no right of action unless born alive, (2) liability for in útero injuries does not exist until there is a live birth, and (3) the Statute of Limitations cannot fun until there is a legal right to relief.
The LaBello case (supra) is easily distinguished from the matter at bar. In the instant matter the cause of action had already expired prior to the birth of the plaintiffs.
Nuisance — Eleventh Cause of Action
Plaintiffs, in their eleventh cause of action, assert a claim predicated upon nuisance. Defendants move to dismiss this cause of action on the grounds that consumers cannot assert a nuisance claim against a product manufacturer, that plaintiffs fail to state a claim for public nuisance, and that plaintiffs fail to state a claim for private nuisance.
*767 A nuisance consists of the wrongful or unlawful maintenance of a property. Plaintiffs have attempted to equate the maintenance of a property with the advertising of a product.
The courts, however, have distinguished nuisance from negligence.
Generally at common law, a nuisance is a wrong arising from an unreasonable or unlawful use of a house, premises, place, or property, to the discomfort, annoyance, inconvenience, or damage of another.
The term nuisance has been divided into two categories, to wit: public and private nuisance. Private nuisance has been defined as an interference with the use or enjoyment of land. Public nuisance, on the other hand, at common law was always a crime and punishable as such (Blessington v McCrory Stores Corp., 198 Misc 291, affd 279 App Div 807, affd 305 NY 140).
Nuisance is distinguishable from negligence. It has been held that nuisance is the wrongful maintenance of something, whereas negligence relates to the manner of doing the thing. As stated in Blessington (supra), nuisance is the wrongful or unlawful maintenance of the thing resulting in damage to others that gives the right of action irrespective of whether its operation was careful or careless; while negligence is the careless operation of the thing whereby others are damaged, irrespective of whether it is lawful or unlawful.
In the matter at bar, the facts alleged do not sustain a claim for nuisance. No rights to land, nor their enjoyment or their impairment have been involved (see, Blessington v McCrory Stores Corp., supra).
Furthermore, the facts alleged do not fit the statutory definition of a public nuisance.
Penal Law § 240.45 defines a criminal nuisance as follows:
“A person is guilty of criminal nuisance in the second degree when:
“1. By conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons; or
“2. He knowingly conducts or maintains any premises, place or resort where persons gather for purposes of engaging in unlawful conduct.”
The alleged conduct of the defendants clearly does not meet this definition.
In the instant matter, defendants allegedly manufactured or promoted a product which the plaintiffs contend was inher *768 ently dangerous. Noteworthy is the fact that these acts occurred decades ago. A products liability action, where the damages are restricted to the user of the product and result from its allegedly negligent manufacture, does not give rise to a nuisance cause of action (Di Carlo v Ford Motor Co., 65 AD2d 597).
As a result, plaintiffs’ eleventh cause of action which asserts a claim predicated upon nuisance must be dismissed.
Consumer Fraud — Twelfth Cause of Action
Plaintiffs, in their twelfth cause of action, assert a claim predicated upon the consumer fraud statute. General Business Law § 349 provides in pertinent part as follows:
“(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.
“(b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules * * *
“(f) In connection with any proposed proceeding under this section, the attorney general is authorized to take proof and make a determination of the relevant facts, and to issue subpoenas in accordance with the civil practice law and rules.
“(g) This section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state, and shall not supersede, amend or repeal any other law of this state under which the attorney general is authorized to take any action or conduct any inquiry.
“(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to *769 exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney’s fees to a prevailing plaintiff.”
In addition, General Business Law § 350 provides: “False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.”
General Business Law § 350-a further provides, in pertinent part, as follows: “1. The term ‘false advertising’ means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. For purposes of this article, with respect to the advertising of an employment opportunity, it shall be deemed ‘misleading in a material respect’ to either fail to reveal whether the employment available or being offered requires or is conditioned upon the purchasing or leasing of supplies, material, equipment or other property or whether such employment is on a commission rather than a fixed salary basis and, if so, whether the salaries advertised are only obtainable if sufficient commissions are earned.”
Additionally, section 350-e provides as follows:
“1. This article neither enlarges nor diminishes the rights of parties in private litigation except as provided in this section.
“2. This article does not repeal the provisions of subdivision twelve of section sixty-three of the executive law.
“3. Any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defen *770 dant willfully or knowingly violated this section. The court may award reasonable attorney’s fees to a prevailing plaintiff.”
The court notes that the provisions of General Business Law § 349 (h) and § 350-e (3), which create a private right of action to recover damages and to enjoin deceptive business practices and false advertising, became effective on June 19, 1980. Section 350 when enacted in 1963 only empowered the State Attorney General to commence actions against businesses to enjoin false advertising. Similarly, the enactment of section 349 permitted the Attorney General to seek to enjoin deceptive acts and practices and to obtain restitution.
The above statutes did not provide for retroactive application. Since the conduct complained of occurred prior to enactment of these statutes, the provisions are inapplicable.
Moreover, it should be noted that proof of reliance is essential to maintain a cause of action" for false advertising under General Business Law § 350. Reliance on defendants’ misrepresentations will not be presumed where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence (Small v Lorillard Tobacco Co., 252 AD2d 1, affd 94 NY2d 43).
In the matter at bar, the dangers associated with white lead pigment were well established decades prior to the injuries complained of, and in fact, decades prior to the birth of the infant plaintiffs. This is most dramatically evidenced by the ban on the sale of paints containing such pigments as of December 31, 1959. As a result, plaintiffs, herein, cannot claim ignorance. Rather, the widely available information about the dangers of white lead pigment forecloses any presumption of reliance (Small v Lorrillard Tobacco Co., supra).
DECISION
Motion by defendants to dismiss is granted to the extent of dismissing the first, third, tenth, eleventh and twelfth causes of action.
Cross motion by Kevin Rivera, Isha Sanchez, Jessenia Sanchez, infants, by their mother and natural guardian, Gladybell Centeno, and Gladybell Centeno individually, to intervene as plaintiffs in the above-captioned action is granted to the extent of permitting the said plaintiffs to intervene in accordance with this decision. No opposition has been submitted to the request to intervene.

 While a current claim for breach of express warranties would be controlled by Uniform Commercial Code § 2-725, the instant claim is controlled by pre-UCC law since it is based upon transactions which occurred prior to the UCC’s effective date of September 1964.