**Helen and Lester LEVINE, Plaintiffs,**

v.

**SEARS ROEBUCK AND CO., INC.
and Sears Home Central, Inc.
Defendants.**

No. 00–CV–7616 (ILG).

United States District Court,
E.D. New York.

May 1, 2002.

Cynthia Dolan, Esq., Boeggeman, George, Hodges & Corde, P.C., White Plains.

Thomas B. Grunfeld, Esq., Kahn, Gordon, Timko & Rodriques, New York.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### SUMMARY

Plaintiff Helen Levine ("Mrs.Levine") brings this action against defendants Sears Roebuck & Co. Inc. and Sears Home Central, Inc. (collectively, "Sears"),[1] for personal injuries she allegedly sustained after she tripped over the door of her Kenmore dishwasher. Mrs. Levine raises claims of negligence, strict product liability and breach of warranty. Plaintiff's husband Lester Levine ("Mr.Levine") raises a claim for loss of consortium due to his wife's injuries. Sears now moves for summary judgment. For the reasons that follow, the motion is granted.

### BACKGROUND

The relevant facts, viewed in the light most favorable to plaintiff (as this Court must do on a motion for summary judgment by the defendant, *see Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987)), are as follows.[2] On April 12, 1999, at approximately 11:00 a.m., Mrs. Levine tripped and fell in her kitchen, while unloading dishes from her dishwasher, and sustained personal inju-

---

1. The Court will hereinafter refer to both Sears defendants as one defendant, because neither party has treated them separately in their papers.

2. Neither party filed a Statement of Material Facts as required under Rule 56.1 of the Local Civil Rules for the Southern and Eastern Districts. Although the failure to comply with this rule may constitute grounds for denial of the motion, *see* Local Rule 56.1(a), the Court will entertain the motion upon the affidavits, deposition transcripts, and exhibits submitted by the parties.

ries. Mrs. Levine testified about the events of that morning as follows: As she was unloading dishes from the dishwasher, she picked up some glasses and turned to her left to place them in the cabinet. (*See* Mrs. Levine Deposition ("H. Levine Dep.") at 16, attached to George S. Hodges Affidavit ("Hodges Aff.") as Ex. E.) She then "turned around to get more dishes out, [at which point] the door gave a bang to the floor, [her] foot got caught under the door and [she] tripped right over the door." (*Id.*)

Within moments of her fall, Mr. Levine entered the kitchen and saw his wife on the floor. (*See* Mr. Levine Deposition ("L. Levine Dep.") at 6, attached to Thomas B. Grunfeld Affidavit ("Grunfeld Aff.") as Ex. 1.) He also observed that the open dishwasher door was slanted downward below its normal position, with the unhinged end (the top of the door) hanging about five inches above the floor. (*Id.* at 8.)

The Levines had purchased the subject dishwasher from Sears in 1983. (*See* L. Levine Dep. at 11.) However, the dishwasher had been designed and manufactured by a company called White Consolidated.[3] (*See* Hodges Aff. ¶ 9.) When plaintiffs purchased the machine, they also entered into a maintenance agreement with Sears Home Central, which they renewed every two years; this agreement had recently been renewed and was in full effect at the time of Mrs. Levine's accident. (*See* L. Levine Dep. at 21–22; Maintenance agreement, attached to Grunfeld Aff. as Ex. 8.) The Levines had their dishwasher serviced under their Sears maintenance agreement on an average of two to three times a year over a seventeen year period. (*See* L. Levine Dep. at 21.) During that time, Mrs. Levine made approximately eight complaints to Sears about the dishwasher, for problems ranging from a leaking pump to a squeaky and loose door. (*See* H. Levine Dep. at 23, 25, 28–29; Sears service receipts, attached to Grunfeld Aff. as Exs. 5–6, 9–10.) Mrs. Levine used the dishwasher practically every day. (*See* H. Levine Dep. at 20.)

Mrs. Levine testified that she had problems with the dishwasher door "through the years." (*Id.* at 27.) She described the door as being "loose and shaky"; "noisy," in that it would make a "bang" every time she opened it; and "slanted," in that the door would hang downward towards the floor. (*Id.* at 19–21, 26–28, 34–36.) She stated that, in its worst condition, the door would hang so that the top end was approximately five inches above the floor. (*Id.* at 28.) She stated, however, that the door did not have these problems when it was new. (*Id.*)

Mrs. Levine alleges that, sometime in early January 1999, just three months prior to the accident, she complained to Sears about the door being loose and slanting downward. (*Id.* at 31, 34.) She stated that, on January 12, 1999, a Sears repairman came to her house and inspected the dishwasher door.[4] (*Id.* at 31.) The repairman told her that the door's rubber and screws were loose, but he would have to return a few days later with the appropriate parts. (*Id.*) On January 19th, the repairman came back to plaintiff's house, but did not completely fix the door. (*Id.* at 35.) Mrs. Levine tested the door in front of the repairman, and discovered that it was "still shaky" and "loose." (*Id.*) How-

---

**3.** White Consolidated is not a party to this action.

**4.** Mrs. Levine stated that she remembered the January 12th date because she had kept the service receipt, which allegedly had the words "broken door" written on it; however, she did not produce the service receipt in this litigation, apparently because she lost it. (*See* Mrs. Levine Dep. at 31–32.)

ever, when she told the repairman that the problems remained, he allegedly said to her, "this is it, that's the best he could do and he's not coming back." (*Id.*) She testified that, after the alleged repair, the dishwasher door remained "shaky, loose, slant[ed], [and] never leveled right." (*Id.* at 41.) When asked whether the condition got worse after January, she stated that the door may have dropped an inch or so. (*Id.*) However, she did not call a service technician again until after the accident.[5] (*Id.* at 40.)

A Sears computer generated printout of the service history for January 19th indicates that the Levines had requested service, because the dishwasher was "making [a] loud noise." (Service history printout, dated Jan. 19, 1999, attached to Grunfeld Aff. as Ex. 9.) Another printout for that date confirms that a service person was sent to plaintiffs' home, but indicates under "Technician's comments" that the ser-

vice performed was to "clean out [the] pump." (*Id.*) The job code description for that date also states, "cleaning pump." (*Id.*) There is no indication in Sears's records that, in January 1999, plaintiffs complained about the door or that repairs were made to it.

In June of 1999, after the accident, plaintiffs hired Herbert Aronson, a mechanical engineer, on the recommendation of counsel, to scrutinize the dishwasher door and to give his "expert" opinion as to the efficacy of the alleged repair.[6] (*See* Herbert Aronson Deposition ("Aronson Dep.") at 44–45, attached to Hodges Aff. as Ex. G; Aronson Report at 1, attached to Hodges Aff. as Ex. H.) He was not asked to examine the dishwasher door for any design or manufacturing defects, and, accordingly, did not render an opinion in his report as to those issues. (*See* Aronson Dep. at 44–46.)[7]

---

5. After the accident, in June of 1999, Sears sent a service technician to the Levine's home to repair the dishwasher door. (*See* Service record, dated Jun. 29, 1999, attached to Grunfeld Aff. as Ex. 10.) Sears's records indicate that the service technician's identification number was 1016. (*Id.*) Marcos Viera testified that he was the service technician who went to the Levine's home to repair the door in June of 1999. He stated, however, that he had never met the Levines prior to the accident, and that he had never been to their home to repair the dishwasher prior to June of that year. (*See* Marcos Viera Deposition ("Viera Dep.") at 34, attached to Grunfeld Aff. as Ex. 2.) Yet, Sears's service record for January 19th indicates that service technician 1016 provided service on that date. (*See* Service record printout, dated Jan. 19, 1999, attached to Grunfeld Aff. as Ex. 9.) Because these numbers are the same, plaintiff contends that an issue of fact exists as to Mr. Viera's credibility, and whether he in fact was the service technician who came to repair the dishwasher in January of 1999. While this certainly raises an issue of fact, the issue is not material for reasons which will be discussed in the following section.

6. Mr. Aronson had been hired by plaintiffs' counsel on several previous occasions to provide his "expert" opinion in personal injury cases. (*See* Aronson Dep. at 30.)

7. At Mr. Aronson's deposition, the following colloquy took place:

Q: So, my question to you then is were you specifically asked to consider whether there were any manufacturing design defects involved in this case?

A: I don't recall whether I was, but I don't think so.

Q: Following your inspection of the machine, did you find or conclude that there were any manufacturing or design [defects] to this machine?

A: . . . I did not address any manufacturing defect issues.

. . .

Q: Is it fair to say then that you did not render an opinion regarding the machine and whether there was a designer manufacturing defect?

A: No, not in this case.

(Aronson Dep. at 45–46.)

Mr. Aronson inspected the machine and, based on his own observations and information provided to him by Mrs. Levine, made the following conclusions. (*See* Aronson Dep. at 113–14.) He found that the dishwasher door opened beyond its horizontal position because the right door stop, which was designed to limit the opening of the dishwasher door to its approximate horizontal position, had "been subjected to a structural failure and the block attachment screws were found to be missing." (*See* Aronson Report at 3.) He also found that the tension springs, which were designed to "dampen (slow down) the free fall motion" of the door, had "either failed" or had "become disengaged." (*Id.* at 4; Aronson Dep. at 85.) Mr. Aronson testified, however, that he never actually observed the tension springs, because that would have required him to take apart the door frame, which he did not do. Instead, he based his finding on Mrs. Levine's assertion that the repairman neglected to repair the springs and the door frame, and on his own observation that the door would free fall into its open position without "damping action." (Aronson Report at 4; Aronson Dep. at 87, 114.) Mr. Aronson concluded that the inadequacy of the alleged service repair created a "tripping hazard for Mrs. Levine," based on her expectation that the door would remain in its normal level position, and not drop while she was unloading dishes. (*See* Aronson Report at 5; Aronson Dep. at 114.)

On or about December 4, 2000, plaintiffs commenced this action in the New York Supreme Court, Kings County. The action was then removed to this Court based on diversity jurisdiction. (*See* Notice of Removal, attached to Hodges Aff. as Ex. B.) Plaintiff raises multiple causes of action sounding in negligence, strict product liability, and breach of warranty.[8] She alleges that the dishwasher door had both manufacturing and design defects, that Sears failed to adequately repair the dishwasher door, and that Sears failed to warn her of a dangerous condition. Mr. Levine raises one claim for loss of services due to his wife's injuries. On December 7, 2001, Sears moved for summary judgment. Sears argues that there is no genuine issues of material fact as to any of plaintiffs' claims, and that summary judgment must therefore be granted as a matter of law. Defendant also argues that, if the Court determines that triable issues exist, Mr. Aronson should not be allowed to testify as an expert witness at trial.

Plaintiffs oppose summary judgment, arguing that genuine issues of material fact exist as to the following: (1) whether plaintiff complained about the dishwasher door prior to the accident; (2) what repairs, if any, the defendant made in January 1999; (3) whether defendant's own computer generated business records are incomplete, unintelligible, subject to manipulation, and unreliable;[9] and (4) whether defendant's service technician is an incredible witness. Notably, these issues of

8. Plaintiff appears to raise breach of warranty claims under both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. (*See* Compl. at 6–9.)

9. Plaintiffs have supplied the Court with their own personal copies of Sears service receipts from 1991, 1994, and 1995. (*See* Service receipts, attached to Grunfeld Aff. as Exs. 5–7.) Because Sears did not submit service

history records before 1997, and, specifically, the 1994 service receipt which involved a repair of the dishwasher door, plaintiffs question whether Sears has purposely failed to produce all of its documents relating to this case. Sears contends that it has produced every document in its possession, and that it is not obligated by law to maintain records going back that far.

fact pertain only to the question of whether Sears had notice of the need to repair the dishwasher door, and whether such repairs were made. By asserting that these are the only issues of fact, plaintiff has effectively conceded that no material fact issues exist as to her strict products liability and breach of warranty claims. Nevertheless, the Court will endeavor to determine whether material issues of fact exist as to all of plaintiff's claims. *Cf. Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir.2001) (holding summary judgment may only be granted if *appropriate*, not simply because motion is unopposed).

### *DISCUSSION*

#### I. *Summary Judgment Standard*

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions ... together with the affidavits ... show that there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks and citations omitted). In deciding a summary judgment motion, a court should not resolve disputed issues of fact; rather, it simply must decide whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A disputed fact is material only if it might affect the outcome of the suit under the governing law. A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a reasonable jury could return a verdict in her favor. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. The motion "will not be defeated merely ... on the basis of conjecture or surmise." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "In assessing the record to determine whether there is a genuine issue of fact, the court is required to draw all inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). Additionally, while summary judgment is disfavored in negligence cases, *see Hood v. Regency Maritime Corp.*, No. 99–CV–10250, 2000 WL 1761000, at *2 (S.D.N.Y. Nov.30, 2000), "the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment," *Cummiskey v. Chandris, S.A.*, 719 F.Supp. 1183, 1186 (S.D.N.Y.1989); *accord Hood*, 2000 WL 1761000, at *2 (citing *Cummiskey* ).[10]

#### II. *Plaintiff's Negligence Claims Must Fail*

##### A. *There is No Material Issue of Fact as to Whether Sears Negligently Repaired the Dishwasher Door*

■ In order to sustain a cause of action under a negligence theory, a plaintiff must show that the defendant had a duty of care to act reasonably to protect against foreseeable risks, that the defendant breached that duty of care, and that plaintiff's injuries were the proximate cause of the breach. *See* Prosser and Keeton, The Law of Torts § 30, at 164 (5th

---

**10.** A federal court sitting in diversity generally applies the law of the forum state. Because jurisdiction in this case is premised on diversity, and the parties both present arguments based on New York law, the law of the forum state, this Court will apply New York law. *See Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 203 n. 7 (2d Cir.1998); *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 n. 5 (2d Cir.1998).

ed.1984); *Solomon v. City of N.Y.,* 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985). New York places such a duty on persons who undertake to make repairs. As stated by the Appellate Division, Third Department, "a repairer *may* be liable for injuries caused by the unsafe operation of a device if, in response to a complaint concerning the very same operation which later caused the injury, the repairer undertook to make repairs and negligently failed to inspect to find the actual defect." *Vermette v. Kenworth Truck Co.,* 111 A.D.2d 448, 450, 488 N.Y.S.2d 507, 509 (3rd Dep't 1985) (emphasis added) (citing *Wroblewski v. Otis Elevator Co.,* 9 A.D.2d 294, 296–97, 193 N.Y.S.2d 855, 857–58 (3d Dep't 1959)); *Witter v. Abell–Howe Co.,* 765 F.Supp. 1144, 1149 (W.D.N.Y.1991); *Beasock v. Dioguardi Enters., Inc.,* 117 A.D.2d 1015, 499 N.Y.S.2d 558 (4th Dep't 1986).

Underlying a negligent repair claim is the concern that a repairer will hand over an unsafe product that appears fixed, but which is actually still in an unsafe condition. *See Beasock,* 117 A.D.2d at 1015, 499 N.Y.S.2d at 559 (quoting Restatement (Second) of Torts § 403, comment b) (a repairer subjects himself to liability when he inadequately repairs a chattel and then turns it over as repaired, when in fact its condition has not improved, because it "gives a deceptive appearance of safety"). Plaintiff has never alleged that Sears told her that the dishwasher was fully repaired or that the dishwasher door appeared safe. *See infra* at 11. Thus, under *Beasock* and the Restatement (Second), plaintiff cannot maintain her negligent repair claim against Sears.

Similarly, in *Kirshenbaum v. Gen. Outdoor Adver. Co., Inc.,* 258 N.Y. 489, 180 N.E. 245 (1932), the New York Court of Appeals held, albeit in the context of a landlord and tenant, that when a landlord abandons his undertaking to make a gratuitous repair, he will be liable for loss if he has given false assurances that the premises are in complete repair, and the tenant places full reliance thereon.[11] 258 N.Y. at 496, 180 N.E. 245; *Miller v. Noyes,* 268 A.D. 797, 49 N.Y.S.2d 167 (2d Dep't 1944) (dismissing negligence action against landlord under *Kirshenbaum,* because plaintiffs knew of alleged defective condition for some months prior to the accident, and there were no claims that false representations were made or relied on by plaintiffs). The *Kirshenbaum* Court's reasoning, as stated below, is instructive in this case.

In *Kirshenbaum,* the Court stated: "The gist of the defendant's wrong is the misleading quality of his conduct and words.... It is the duty of one choosing to perform an ... undertaking to take care lest he should mislead his promisee into the belief that the work has been done and the premises made safe for use." 258 N.Y. at 497, 180 N.E. 245 (internal quotation marks and citations omitted). It is the "deceptive appearance of safety" which leads the customer to use the instrumentality in a way "which but for the repairs they would recognize to be dangerous...." *Id.* Thus, "[i]t is sufficient to create liability if the making of the repairs has 'cloaked the defect, dulled the call to vigilance, and so aggravated the danger.'" *Id.* (quoting *Marks v. Nambil Realty Co.,* 245 N.Y. 256, 259, 157 N.E. 129 (1927) (Cardozo, J.)).

Preliminarily, the parties here vigorously dispute whether Sears had notice of the alleged defect, and whether a service tech-

**11.** The repair in *Kirshenbaum* was "gratuitous," because the landlord was not obligated to make repairs under the terms of the lease.

nician made repairs to the dishwasher door in January 1999. If, as argued by Sears, the repairman who came in January was never told that the door needed repairs, and, consequently, he never attempted to repair it, Sears could not have breached a duty to inspect the door for defects. *Vermette*, 111 A.D.2d at 450, 488 N.Y.S.2d at 509. In support of its contention, Sears has submitted service records from that month, which make no reference to complaints about, or repairs to, plaintiff's dishwasher door. Plaintiff, however, contests the reliability of these records, based on her copy of a 1994 service record, which was not included in Sears's submissions to the Court, and which indicates that repairs had been made to the door. (*See* Customer copy of service record, dated Dec. 13, 1994, attached to Grunfeld Aff. as Ex. 6.) [12] Plaintiff also challenges the credibility of the Sears service technician, Mr. Viera, who made repairs to the door in June following the accident, but who denies making repairs in January before the accident. (*See* Viera Dep. at 34, attached to Grunfeld Aff. as Ex. 2.) Such credibility challenges are premised on the fact that service records for those dates indicate that the same service technician made repairs to the dishwasher on both occasions. (*See* Service record printouts, dated Jan. 19, 1999 and Jun. 29, 1999, attached to Grunfeld Aff. as Exs. 9, 10.) Following this reasoning to its logical conclusion, plaintiff asserts that, if Mr. Viera is being untruthful when he states that he did not repair plaintiffs' dishwasher in January, then he may in fact have made repairs to the door at that time.

Because this case is before the Court on a motion for summary judgment, the Court must give plaintiff all benefits of the doubt, and draw all inferences in her favor. *Ramseur*, 865 F.2d at 465. Thus, for purposes of this motion, the Court will assume that Sears had notice of plaintiff's problems with the dishwasher door, and that a Sears service technician made repairs to it in January of 1999.

Notwithstanding these facts, however, the Court still finds that summary judgment is appropriate. As noted above, plaintiff does not allege, nor does the record reveal, that the service technician misrepresented to her that the door was fixed completely, or that she relied on his assurances to that effect. Plaintiff admitted that she knew the door had not been fixed by the repairman, because when she inspected it in his presence, she discovered that it was still loose and shaky. She was also never assured that the door had been fixed, because, by her own testimony, the repairman told her that "that was the best he could do." (*See* H. Levine Dep. at 35.) Plaintiff also testified that she observed the door slanting downward towards the floor from the time of the repair until she had her accident. (*Id.*) The Court also notes that plaintiff certainly would have had occasion to notice the position of the door, as she testified that she used the machine practically every day. (*Id.* at 41.) There is simply no suggestion that the repairman assured plaintiff that the door's problems had been corrected, nor could plaintiff have been deceived by an appearance of safety. Accordingly, plaintiff's negligent repair claim must be rejected as a matter of law.[13] *See, e.g., Kelly v. Wat-*

---

12. It is important to note that this record is of a service rendered more than four years prior to the event in issue and bears no relevance to it.

13. The Court also notes that plaintiff's own expert contradicts part of her testimony, when he states that there was no particular sound made by the door when he opened it, and that there was nothing "unusual" about the door. (*See* Aronson Dep. at 63.)

*son Elevator Co.*, 309 N.Y. 49, 50–51, 127 N.E.2d 802 (1955) (holding elevator company liable for injuries sustained by person who tripped when entering elevator after she had been assured by elevator repairman that problem had been corrected); *Wroblewski*, 9 A.D.2d at 296, 193 N.Y.S.2d at 857–58 (holding elevator repairman could be found negligent for injuries sustained when elevator plunged downward, if jury believed that plaintiff made specific complaint that elevator was not working properly, and, in response to that complaint, elevator repairman examined elevator and assured plaintiff that it was all right).

Moreover, Mr. Aronson's conclusion that the alleged inadequate repair created a tripping hazard for Mrs. Levine is simply not supported by the record. Mr. Aronson's conclusion was admittedly based on his understanding that the door opened to its normal horizontal position just prior to the accident and dropped that morning while Mrs. Levine was unloading dishes. (*See* Aronson Dep. at 107.) Based on this assumption, Mr. Aronson concluded that the door dropping created a tripping hazard, based on Mrs. Levine's expectation that the door would remain in its normal horizontal position. (*Id.* at 105–07.) This assumption, however, contradicts Mrs. Levine's testimony that the door was still "shaky, loose, slant[ed], [and] never leveled right" after the alleged January repair, and that, prior to the accident, the door hung down to approximately five inches

above the floor. (*See* H. Levine Dep. at 28, 41.) Moreover, Mr. Levine testified that the door hung to about five inches above the floor immediately following the accident, which is consistent with Mrs. Levine's testimony about the position of the door before the accident. (*See* L. Levine Dep. at 8–9.) Based on plaintiffs' testimony, the Court cannot credit Mr. Aronson's conclusion that the door in this instance created a tripping hazard.[14]

Because there is no evidence of any misrepresentation by the repairman, or that Mrs. Levine was deceived by an appearance of safety, plaintiff's negligent repair claim must be rejected as a matter of law.

**B.** *There is No Material Issue of Fact as to Whether Sears Negligently Failed to Warn Plaintiffs of a Dangerous Condition*

 A repairer not only has a duty to use reasonable care to inspect for defects, but also "to warn intended users of any potential dangers ... of which he knows or should know, and *which are not obvious to the intended users.*" *Beasock*, 117 A.D.2d at 1015, 499 N.Y.S.2d at 558 (emphasis added); *Witter*, 765 F.Supp. at 1148. The purpose of such a warning is to ensure against deceiving an intended user by an "appearance of safety." *Beasock*, 117 A.D.2d at 1015, 499 N.Y.S.2d at 559. However, there is no duty to warn against a dangerous condition that is open and

---

**14.** A reading of Mr. Aronson's deposition would compel the Court to preclude him from testifying as an expert or rending an opinion that an obvious condition that existed for years was a tripping hazard. His deposition testimony can only be charitably characterized as the kind of "junk science" testimony that the Supreme Court aimed at in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co., Ltd. v. Carmicha-*

*el*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). "The injustice which may be suffered by and the havoc wreaked upon either party to a law suit by such testimony having no relation to the facts other than the *ipse dixit* of the 'expert' has been commented upon long ago in *Rubinstein v. Marsh*, No. CV–80–0177, 1987 WL 30608, at *7 (E.D.N.Y. 1987)." *Mannix v. Chrysler Corp.*, No. 97–CV–1944, 2001 WL 477291, at *4 (E.D.N.Y. Mar. 4, 2001).

obvious to the intended user. "Where a danger is readily apparent as a matter of common sense, 'there should be no liability for failing to warn someone of a risk or hazard which he [or she] appreciated to the same extent as a warning would have provided.'" *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 242, 677 N.Y.S.2d 764, 769, 700 N.E.2d 303 (1998) (citing Prosser and Keeton, The Law of Torts § 96, at 686 (5th ed.1984)); *cf. Pedersen v. Kar, Ltd.*, 283 A.D.2d 625, 625–26, 724 N.Y.S.2d 776, 777 (2d Dep't 2001) (holding a property owner has no duty to warn of dangers "that are readily observable by the reasonable use of one's senses"); *Canetti v. AMCI*, 281 A.D.2d 381, 382, 721 N.Y.S.2d 398, 399 (2d Dep't 2001) (summary judgment proper because presence of loading dock not an inherently dangerous condition, and was readily observable).

■■ Although the "open and obvious" exception is generally a fact-specific inquiry into whether a particular risk was obvious to the injured party, and therefore most often a jury question, "[w]here only one conclusion can be drawn from the established facts …, the issue … may be decided by the court as a matter of law." *Liriano*, 92 N.Y.2d at 242, 677 N.Y.S.2d 764, 700 N.E.2d 303. Plaintiff has presented no facts to dispute defendant's contention that the condition of the dishwasher door was known to plaintiff prior to the accident. Instead, plaintiff asserts that "even if the condition was determined to be open and obvious, defendant still breached its duty to plaintiff to protect or warn [her] by virtue of its prior service call." (Pl. Mem. in Opp'n at unpaginated 5.) Defendant's argument is not persuasive, as it is the very open and obvious nature of the hazard which necessarily obviates any duty to warn. Based on the facts presented here, the Court is driven to conclude that this case fits within the narrow group of negligence cases that may be decided by the court as a matter of law.

### III. *Plaintiff's Strict Products Liability Claims Must Fail* [15]

#### A. *Sears Did Not Manufacture or Design the Subject Dishwasher*

■ In the complaint, plaintiff alleges that Sears designed and manufactured the dishwasher as a basis for bringing design and manufacturing defects claims sounding in strict products liability. (*See* Compl. ¶¶ 8, 14, 23.) However, plaintiffs have failed to contest defendant's assertion that the dishwasher was designed and manufactured by a different company, namely, White Consolidated. (*See* Hodges Aff. ¶ 9.) Plaintiff's failure to oppose this fact is fatal to her design and manufacturing defects claims. Plaintiff must do more than merely rely on the allegations in her complaint to create a genuine issue of fact for trial. *See* Fed.R.Civ.P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings" to oppose a motion for summary judgment.) Moreover, there is not a shred of a suggestion that there was a manufacturing or design defect. Mr. Aronson never considered it nor was he asked to. (*See* Aronson Dep. at 43–44.)

---

15. Although plaintiff also seems to plead claims of negligent manufacture, design, and sale in her complaint, she does not argue that triable issues of fact exist as to these claims in her memorandum of law in opposition. Because these negligence claims must be rejected for the same reasons her strict products liability must be dismissed, the Court will not give separate treatment to these negligence claims. Accordingly, for the reasons stated in the text of this opinion, plaintiff's negligent manufacture, design, and sale claims are dismissed. *See Elsroth v. Johnson*, 700 F.Supp. 151, 158 (S.D.N.Y.1988) (holding that plaintiff cannot recover in negligence on his products claim that he cannot first recover under strict products liability).

Accordingly, the strict products liability claims against Sears as the manufacturer or designer of the products must be dismissed.

B. *Plaintiff's Claim Against Sears as the Seller Must Fail Because There is No Material Issue of Fact as to Whether the Dishwasher Door was Defective at the Time of Sale*

Plaintiff also claims that Sears is liable as the retailer of the subject dishwasher under a theory of strict products liability. Underlying these claims is the allegation that Sears sold the Levines a defective dishwasher. However, plaintiff has failed to put forth any evidence to support this allegation.

A retailer or seller of a defective product may be liable under a theory of strict products liability if the products is sold in the regular course of the seller's business. *See, e.g., Suklijian v. Ross & Son Co.,* 69 N.Y.2d 89, 95, 511 N.Y.S.2d 821, 823, 503 N.E.2d 1358 (1986). Based on sound public policy, a seller may be held accountable under that theory because, by marketing the product, he "has undertaken a special responsibility toward the consuming public ... and [t]he public has a right to expect that [he] will stand by [his] goods." *Sage v. Fairchild–Swearingen Corp.,* 70 N.Y.2d 579, 585, 523 N.Y.S.2d 418, 421, 517 N.E.2d 1304 (1987); Restatement (Second) of Torts § 402A, comment c. However, a seller's liability is generally limited to defects attributable to the time of sale. *See, e.g., Elsroth,* 700 F.Supp. at 159; Restatement (Second) of Torts § 402A, comment g ("defective condition" defined as "at the time it leaves the seller's hands"). Thus, a "seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful...." Restatement (Second) of Torts § 402A, comment g.

To maintain a strict products liability claim, plaintiff must show that the defect arose through a "manufacturing flaw, design defect or because of the inadequacy or absence of warnings for the use of such products." *Sage,* 70 N.Y.2d at 585, 523 N.Y.S.2d at 421, 517 N.E.2d 1304. Under New York law, a specific defect need not be proven by direct evidence, but may be shown through circumstantial evidence that the products did not perform as intended by the manufacturer. *See, e.g., W. Taft v. Sports Page Shop Inc.,* 226 A.D.2d 974, 976, 640 N.Y.S.2d 698, 699 (3d Dep't 1996); *Shelden v. Hample Equip. Co., Inc.,* 89 A.D.2d 766, 767, 453 N.Y.S.2d 934, 935 (3d Dep't 1982).

Plaintiff's speculative and wholly conclusory allegation that there must have been a latent defect in the door, without more, is not enough to defeat Sears's motion for summary judgment. *See Bryant,* 923 F.2d at 982 (summary judgment will not be defeated on the basis of conjecture or surmise). Accordingly, plaintiff's strict products liability claim against Sears as the seller of a defective product must fail. *See, e.g., Shelden,* 89 A.D.2d at 767, 453 N.Y.S.2d at 935 (holding that products liability claim should not have been submitted to the jury, because record did not support any design defect, and plaintiff failed to satisfy his burden of eliminating defendant's purported reason for the injury); *Sabater ex rel. Santana v. Lead Indus. Ass'n, Inc.,* 183 Misc.2d 759, .765, 704 N.Y.S.2d 800, 804 (N.Y.Sup.2000) (holding that plaintiff must show that product was not safe as designed to maintain negligence claim under product liability theory).

C. *Plaintiff's Strict Products Liability Claim Against Sears As Repairer Must Fail*

There is no cause of action against a repairer of goods under a theory

of strict products liability. *See, e.g., Trustees of Columbia Univ. v. Gwathmey Siegel & Assocs. Architects,*. 192 A.D.2d 151, 155, 601 N.Y.S.2d 116, 119 (1st Dep't 1993); *Nickel v. Hyster Co.,* 97 Misc.2d 770, 771, 412 N.Y.S.2d 273, 274–75 (N.Y.Sup.1978). In an effort to save her claim, plaintiff argues that liability may be found against Sears in its dual role as seller and servicer of the subject dishwasher. Plaintiff relies on *Nickel, supra,* and *Jackson v. Melvey,* 56 A.D.2d 836, 392 N.Y.S.2d 312 (2d Dep't 1977), in support of her argument. A close reading of these cases, however, reveals that plaintiff's reliance is misplaced.

▇ A hybrid service-sale transaction may give rise to a cause of action for breach of warranty or strict products liability, but only when the sale aspect of the transaction predominates and the service aspect is merely incidental. *Nickel,* 97 Misc.2d at 773, 412 N.Y.S.2d at 276 (citing *Schenectady Steel Co. v. Trimpoli Gen. Constr. Co.,* 43 A.D.2d 234, 237, 350 N.Y.S.2d 920, 922 (3d Dep't), *aff'd,* 34 N.Y.2d 939, 359 N.Y.S.2d 560, 316 N.E.2d 875 (1974)). The facts here simply do not support the conclusion that the sale predominated, or that it was at all relevant, to the alleged January 1999 repair.

In *Jackson,* the· defendant owner and driver of a vehicle, in which plaintiff passenger was injured brought a third-party action against the manufacturer and the dealer, alleging that the accident occurred by reason of a defect in the steering mechanism. 56 A.D.2d 836, 392 N.Y.S.2d 312. The uncontradicted evidence established that the dealer had inspected and/or repaired the vehicle, just one week after it had been purchased and two weeks prior to the accident, when the vehicle's owner returned it complaining of steering problems. When the owner returned to pick up the vehicle, he was assured that the

vehicle had been repaired and that it was in good operating condition. The appellate court reversed the lower court's dismissal of the breach of warranty claim against the dealer and ordered a new trial, holding that the jury could have found that the dealer, which held itself out as a repairer of automobiles and provided service under the new car warranty, failed to make the proper repairs, thereby contributing to the accident.

The question addressed by the court in *Nickel* was the precise question at issue here—whether the doctrine of strict products liability encompasses the activities of repairers. 97 Misc.2d at 770–71, 412 N.Y.S.2d at 274. The action in *Nickel* arose out of injuries incurred by plaintiff when his employer's forklift truck, which had been repaired by defendant, exploded. Plaintiff sought to add a claim against the defendant for its repair of the truck under a theory of strict products liability. The *Nickel* plaintiffs relied on *Jackson* to support their contention that strict products liability was applicable to repairers, noting that, although plaintiffs in *Jackson* raised a breach of warranty claim against the seller/servicer defendant, the claim was actually a claim for strict products liability.

The *Nickel* court first rejected plaintiff's contention that the *Jackson* court incorrectly labeled the claim as one for breach of warranty. *Nickel,* 97 Misc.2d at 772–73, 412 N.Y.S.2d at 275. The court then declined plaintiff's invitation to expand strict products liability law to cover repairers generally, when the sale was either incidental to the service or was not involved in the transaction at all. *Id.* at 773, 412 N.Y.S.2d at 275. The court found that, in *Jackson,* the sale part of the transaction clearly predominated, because the repairs were made just one week after the sale under the new car warranty. *Id.* This was not the case in *Nickel,* where the defen-

dant was found to be the repairer, and not the seller, of the forklift. *Id.*

Other than the blanket assertion that a defendant seller/repairer may be liable under a strict products liability theory, plaintiff here fails to show why the sale in this case predominated over the repair, or was in any way involved in Sears's services. To the contrary, Sears's sale of the dishwasher occurred nearly seventeen years ago. The Levines had entered into a separate maintenance agreement with Sears, which had been renewed every two years, and under which all repairs had been made. Thus, none of the repairs, and certainly not the last repair before the accident, was performed under a new merchandise warranty. Plaintiff's attempt to characterize her strict products liability claim for inadequate repair as a sale and service hybrid transaction, is like trying to fit a square peg into a round hole. It simply will not fit. Although Sears happened to be the seller of the dishwasher, this fact is not only incidental, but is irrelevant to the subsequent repair which took place under the maintenance agreement.[16]

IV. *Mr. Levine's Loss of Consortium Claim Must Fail*

Because loss of consortium claims are derivative of the underlying claims, Mr. Levine's loss of consortium claim must be rejected because summary judgment is proper as to his wife's personal injury claims. *See Millington v. Southeastern Elevator Co.*, 22 N.Y.2d 498, 508, 293 N.Y.S.2d 305, 313, 239 N.E.2d 897 (1968) ("Where, however, the [wife's] cause of action has been terminated either by judgment, settlement or otherwise, that should

operate to bar the [husband's] cause of action for consortium.").

The Court has considered plaintiff's other arguments and finds them to be ultimately meritless.

### CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted.

SO ORDERED.

---

**16.** Notably, even if plaintiff could show that the sale aspect of the "transaction" predominated, there is no material issue of fact as to whether there was a defect at the time of sale, as previously determined by the Court. *See supra* at 190–192. Thus, either way, plaintiff's strict products liability claim against Sears as a repairer must fail.