■ ANNA MUNOZ et al., Appellants-Respondents, v LEIB PURETZ et al., Defendants, and E.J. STEINFELD et al., Respondents-Appellants. [753 NYS2d 463] —Order, Supreme Court, Bronx County (George Friedman, J.), entered January 18, 2002, which, insofar as appealed and cross-appealed from, granted the motion of defendants E.J. Steinfeld and C. Steinfeld for summary judgment dismissing the complaint on behalf of the infant plaintiff Amorie Munoz, denied plaintiffs' cross motion for partial summary judgment as to liability, and, sub silentio, denied that branch of the Steinfeld defendants' motion to dismiss plaintiffs' claim for punitive damages, unanimously modified, on the law, to deny the Steinfeld defendants' motion for summary judgment dismissing the complaint as to the infant Amorie Munoz, to grant such motion to dismiss plaintiffs' claim for punitive damages, and otherwise affirmed, without costs.

Plaintiffs sue to recover damages for alleged personal injuries suffered by infant plaintiffs Anna Munoz, born August 29, 1985, and Amorie Munoz, born November 22, 1986, as a result of

their alleged exposure to lead-paint hazards existing in their apartment located at 504 West 159th Street in Manhattan (the premises). The Steinfeld defendants are the former owners of the premises. Infant plaintiff Anna was born before defendants sold the premises, and infant plaintiff Amorie was born afterward.

Plaintiffs allege that infant plaintiffs were exposed from the date of Anna's birth until September 1990. In addition, plaintiffs claim that on or about June of 1988 lab tests showed that both infants demonstrated elevated blood lead levels as defined by the New York Public Health Law. The New York City Department of Health issued an order to abate nuisance dated June 15, 1988. Plaintiffs commenced this action in 1995. The Steinfeld defendants thereafter moved for summary judgment dismissing the complaint, and plaintiffs cross-moved for partial summary judgment as to liability.

In support of their motion, the Steinfeld defendants argued that they transferred ownership of the property on or about October 1, 1986. Therefore, they were not responsible for the conditions which may have existed on the premises prior to either infant's initial diagnosis of elevated lead levels in the blood. The motion court concluded that the Steinfeld defendants could not be held liable for lead poisoning injuries to Amorie, who was born after they sold the premises. Accordingly, the motion court dismissed the complaint as to Amorie, but sustained Anna's claim, finding issues of fact.

On appeal, we find that the motion court should not have dismissed Amorie's claim as plaintiffs raised triable issues of fact that Amorie was exposed to lead in utero while the Steinfeld defendants still owned the premises. Plaintiffs' expert opined that Amorie had been subjected to lead toxicity in utero based on his examination of the child and the confirmed finding of lead-based paint on the premises and the child's subsequent diagnosis of elevated lead levels. That defendants' expert opined that the lead levels could not be attributed to any exposure prior to the date the Steinfeld defendants sold the premises merely raises an issue of fact for the jury to resolve.

Moreover, contrary to defendants' contention that plaintiffs' expert's conclusion lacks sufficient scientific reliability, neither the fact of injury from exposure to lead-based paint or in utero transmission implicates novel theories of liability (*see Juarez v Wavecrest Mgt. Team,* 88 NY2d 628, 640-641 [serious health hazard posed to children by exposure to lead-based paint is well established]; *Williamsburg Around the Bridge Block Assn.*

*v Giuliani*, 223 AD2d 64, 66 ["(i)t is well documented and beyond dispute that lead is a highly toxic metal which, when introduced into the human body, produces a wide range of adverse health effects, especially with regard to children and developing fetuses"]; *see also International Union, United Auto, Aerospace and Agric. Implement Workers of Am. UAW v Johnson Controls, Inc.*, 499 US 187, 190 [occupational exposure to lead entails health risks, including risk of harm to any fetus carried by pregnant employees]; *Sabater v Lead Indus. Assn.*, 183 Misc 2d 759, 763 [lead poisoning is extremely troublesome for fetuses, babies and children under six]).

*Bittrolff v Ho's Development Corp.* (77 NY2d 896) is not applicable to the facts at bar. In *Bittrolff*, which is not a lead-based paint poisoning case, the prior owner was not held responsible for injuries first sustained after transfer of the property. Here, the pregnant mother was exposed to the hazard for eight months before defendants transferred ownership, and, as discussed above, the dangers of exposure to lead while in utero are widely recognized.

Although the motion court should not have granted summary judgment dismissing the complaint as to infant plaintiff Amorie, the court. properly found that plaintiffs were not entitled to partial summary judgment as to liability. Given the conflicting affidavits, the issue whether the Steinfeld defendants had actual or constructive notice that a child six years of age or under was living in one of its residential units (*see Juarez, supra*, 88 NY2d at 638) is a question of fact for the jury (*see Castillo v New York City Hous. Auth.*, 266 AD2d 55, *lv denied* 94 NY2d 761). Partial summary judgment as to liability also requires proof that there were no reasonable abatement efforts (*see Velez v Stopanjac*, 273 AD2d 22), but here there is also a factual issue (*see Perez v Ward*, 271 AD2d 590, 591). Moreover, in order to establish causation, plaintiffs must directly link the children's condition to lead in the apartment (*see Saunders v Baker*, 285 AD2d 497, 498). The gap between the alleged exposure and the identifying of lead poisoning in the children raises a question of fact.

Finally, punitive damages are not available for ordinary negligence (*see Zabas v Kard*, 194 AD2d 784). In order to recover punitive damages, a plaintiff must show, by "clear, unequivocal and convincing evidence" (*Sladick v Hudson Gen. Corp.*, 226 AD2d 263, 264), "egregious and willful conduct" that is " 'morally culpable, or is actuated by evil and reprehensible motives' " (*Seynaeve v Hudson Moving & Stor.*, 261 AD2d 168, 168, 169 [citation omitted]). Plaintiffs have failed to estab-

lish that there is anything unusual or extraordinary about defendants' conduct which warrants punitive damages. In terms of moral culpability, this case is not "singularly rare" (see *APW, Inc. v Marx Realty & Improvement Co.*, 291 AD2d 333, 334). Concur—Mazzarelli, J.P., Andrias, Buckley and Marlow, JJ.