[922 NYS2d 408]

MARGUERITE NASH, Respondent, v PORT WASHINGTON UNION
FREE SCHOOL DISTRICT, Appellant. (And a Third-Party Ac-
tion.)

Second Department, April 12, 2011

APPEARANCES OF COUNSEL

*Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger*, Uniondale (*Gregory A. Cascino* of counsel), for appellant.

*Gair, Gair, Conason, Steigman, Mackauf, Bloom & Rubinowitz*, New York City (*Rhonda E. Kay* and *Richard M. Steigman* of counsel), for respondent.

**OPINION OF THE COURT**

DICKERSON, J.

## Introduction

The infant Stephen A. Nash (hereinafter the plaintiff), on whose behalf his mother, Marguerite Nash, commenced this action, sustained severe injuries as a result of an explosion that occurred in his high school's science laboratory. It is undisputed that the teacher assigned to supervise the plaintiff and another student departed from school premises, leaving the two students completely unsupervised. Among the primary issues presented on this appeal, we consider the applicable duty of care when an incident occurs after the formal end of classes for the day, but in an academic setting on school premises involving a course completed for academic credit. We also address the foreseeability of the circumstances leading to the explosion, and whether the accident occurred in so short a span of time that the teacher could not have prevented the plaintiff's injury regardless of the level of supervision. Ultimately, we hold that the plaintiff

established his prima facie entitlement to judgment as a matter of law on the issue of liability by demonstrating that the defendant, Port Washington Union Free School District (hereinafter the school district), breached its duty to exercise the level of care as would a parent of ordinary prudence in comparable circumstances, and that this failure was a proximate cause of the plaintiff's injuries. In opposition, the school district failed to raise a triable issue of fact. Moreover, on the school district's cross motion, it failed to meet its initial burden of establishing its prima facie entitlement to judgment as a matter of law dismissing the complaint. Accordingly, the Supreme Court properly granted that branch of the plaintiff's motion which was for summary judgment on the issue of liability, and properly denied the school district's cross motion for summary judgment dismissing the complaint.

### Factual Background

In April 2007 the plaintiff was a sophomore honors student at the Paul D. Schreiber High School (hereinafter the high school) in Port Washington. The high school was a part of the school district. The plaintiff also was in a Science Research Program (hereinafter SRP) that the school district offered for its academically qualified students. Students accepted into the SRP had to commit to, and remain in, the SRP throughout their entire sophomore, junior, and senior years. The SRP was taught by Ms. Serfaty, a teacher at the high school. At all times relevant here, only nine students were in the SRP.

On Thursday, April 12, 2007, after the end of classes, a fellow student (hereinafter the third-party defendant) who, like the plaintiff, was a sophomore honors student at the high school and in the SRP, informed the plaintiff that he was going to one of the high school's science research laboratories (hereinafter the lab) to work on an ongoing SRP project related to cell culturing. The third-party defendant indicated that Serfaty, who was supervising the project, was waiting in the lab for him. The plaintiff agreed to accompany the third-party defendant to "keep him company."

In addition to standard classroom facilities, the lab was equipped with lab tables, incubators, flow hoods, and other equipment for scientific study and research. The lab contained Bunsen burners, but they were required to be stored in cabinets. The lab was also equipped with a fire extinguisher and a fire blanket.

When the plaintiff and the third-party defendant arrived at the lab, Serfaty let them in. At that time, there was no one present in the lab other than the plaintiff, the third-party defendant, and Serfaty. The third-party defendant began to work on his project, and the plaintiff sat on a nearby stool. After some time, Serfaty suggested to the plaintiff that he "make [himself] useful and clean up the room," so the plaintiff began to do so. During the time the plaintiff spent cleaning the room, the third-party defendant continued to work on his project under the flow hood, and Serfaty returned to and stayed in an office adjacent to the lab.

At approximately 4:15 P.M., Serfaty elected to leave the high school premises to go to the Bagel Boss, a deli within walking distance of the school, to buy something to eat, leaving the two boys unsupervised in the lab. She anticipated that she would be away from the high school for approximately 20 minutes.

Serfaty acknowledged that she was aware of school policy, which included a rule that students may not be left unattended in classrooms. However, in her deposition testimony, she maintained that there was an "understanding" that was "part of the culture of the building" that this rule applied only during regular school hours, as opposed to after the traditional school day. Serfaty testified that, if the rule was that students were required to be supervised under circumstances such as those at issue here, the rule was previously "not adhered to."

In this regard, the third-party defendant did not characterize his science project as "extracurricular." He observed that there was time allotted in his school schedule for such projects, and he would receive a grade for his work on the project.

Additionally, Jay Lewis, principal of the high school, testified at his deposition that the high school had a policy pursuant to which students were not to be left alone in a room. When asked if it were true that this policy was not followed in connection with after-school activities, Lewis responded "[that] is not correct." Lewis stated that

> "on multiple occasions, in full faculty gatherings, meetings, as well as at other times, I and the building administrators always made it clear that students were to be supervised at all times, before, during and after school, in any type of classroom or classroom-related setting, which would include extra help, clubs and activities and after-school activities,

sports, anything. I never made a distinction between before and after-school activities and supervision of students during the school day."

When asked if there was a custom or practice among faculty members that this rule was not to be followed in connection with after-school activities, Lewis responded in the negative. Lewis also stated that it would not have been adequate for a teacher to remain in an office while students were performing an experiment in the adjacent lab.

After Serfaty left the two boys alone in the lab, the third-party defendant emerged from the flow hood. According to the plaintiff, the third-party defendant went to one of the hexagonal lab tables and began to clean his hands with ethyl alcohol. The plaintiff had seen the third-party defendant do this in the past, as the third-party defendant was attempting to minimize "contamination with the cell cultures." The plaintiff returned to the stool where he had been seated previously. The third-party defendant then began to walk back and forth while talking to the plaintiff, as the third-party defendant "doesn't really stand still." According to the plaintiff, the third-party defendant also always needed to keep his hands occupied, and, to this end, he carried with him a wire he would constantly manipulate with his hands. The third-party defendant had been diagnosed with attention deficit hyperactivity disorder, and the plaintiff was aware that the third-party defendant took medication for this condition.

According to the plaintiff, at some point, the third-party defendant picked up a spark lighter that was on a nearby table. The third-party defendant and the plaintiff continued to talk, and the third-party defendant struck the spark lighter several times.

The third-party defendant, too, testified at his deposition, "I believe I was holding a [spark lighter]" in the moment before the explosion. Prior to the explosion, he had been sterilizing the surfaces in the vicinity of his project, including the table top and his gloved hands, with ethyl alcohol. The third-party defendant acknowledged that, in the instant before the explosion, "I might have activated it, I activated it, yes." He did not recall how many times he manipulated the spark lighter. The third-party defendant believed that, at the time, he was holding the spark lighter over a beaker which may have contained ethyl alcohol. He believed he was attempting to "flare off" the excess alcohol. According to the third-party defendant, he had seen

Serfaty demonstrate this procedure to another student two weeks earlier.

The plaintiff testified at his deposition that his next perception after the third-party defendant struck the spark lighter was of being face down on the floor. The plaintiff assumed that there had been an explosion. When the plaintiff raised his head from the floor, he felt the flesh on his face, body, and hands burning. The plaintiff dropped to the floor and rolled around to extinguish the flames. The third-party defendant was screaming hysterically. The plaintiff looked at the third-party defendant, and saw that he was burned as well. The plaintiff then retrieved the fire extinguisher and extinguished the fire on the lab table and a nearby computer table. The third-party defendant testified that he (the third-party defendant) put out the fire.

As a result of the incident, the plaintiff sustained severe second- and third-degree burns on much of his body. He required weeks of extensive treatments, and underwent skin graft surgery. The third-party defendant sustained burns to his face, neck, chest, left arm, and hands. The third-party defendant also had to undergo skin graft surgery.

When Serfaty returned to the area of the high school where the lab was located, a custodian informed her that there had been a fire in the lab. The custodian indicated that he had seen the plaintiff and the third-party defendant run out of the building.

Serfaty acknowledged in her deposition testimony that she was aware of the fact that the third-party defendant was using ethyl alcohol. She further acknowledged that, on the morning of the incident, the third-party defendant described a process by which ethyl alcohol was used as a cleaning agent to sterilize beakers and other objects. Apparently, the third-party defendant was experiencing a problem on his project related to contamination, and was attempting to minimize contamination. The third-party defendant questioned Serfaty about this method repeatedly. Serfaty directed the third-party defendant that "in no way is glassware to be cleaned with alcohol."

In contrast, the third-party defendant testified that both Serfaty and another individual had informed him of the procedure of sterilizing the flow hood and other surfaces with ethyl alcohol. According to the third-party defendant, Serfaty instructed him before he began working on the project at issue to use ethyl alcohol in this manner. He testified that he used this procedure "all the time." When the bottle of ethyl

alcohol the third-party defendant used for this procedure began to run low, he would inform Serfaty that it needed to be refilled.

Serfaty testified that, if she had been present in the classroom, she would not have permitted the third-party defendant to use ethyl alcohol to clean a beaker. However, she also testified that, had she stayed on premises, she may have been in an office adjacent to the lab rather than in the lab itself actively supervising the plaintiff and the third-party defendant.

Additionally, although Serfaty claimed that there were no matches in the lab, she acknowledged that there were flint strikers or spark lighters used to light the Bunsen burners. According to Serfaty, these, too, should have been stored in a drawer. However, she acknowledged that "there may have been one laying around." Serfaty also acknowledged that she knew that if someone activated a spark lighter near ethyl alcohol, the ethyl alcohol could ignite, causing a fire.

Prior to the incident, Serfaty was aware of the fact that the third-party defendant was known to be "fidgety." However, she did not know whether he was considered to have attention deficit hyperactivity disorder, and she did not know until after the incident that he carried in his pocket a wire that he played with to keep his hands occupied.

As a result of this incident, Serfaty was issued a formal letter of reprimand, which she signed in or about June 2007. The letter was issued by Dr. Geoffrey Gordon, superintendent of schools for the school district. The letter stated that, following an investigation, the school district concluded that Serfaty engaged in a "neglect of duty." The letter of reprimand elaborated, "[A]s a professional educator you should have known that leaving students unsupervised in a science lab is not permitted . . . Although you have been a dedicated teacher throughout your career, your conduct in this situation is totally unacceptable."

Serfaty and the school district entered into an agreement, signed by Serfaty on June 18, 2007, and by the school district on July 23, 2007, pursuant to which, in lieu of disciplinary proceedings, Serfaty agreed, among other things, to resign.

## Procedural Background

The plaintiff commenced this action against the school district by the filing of a summons and verified complaint dated January 10, 2008. The complaint asserted a cause of action to re-

cover damages for personal injuries based on negligent supervision, and a derivative cause of action asserted by the plaintiff's mother.

The school district joined issue by service of a verified answer. The school district denied the material allegations of negligence, impleaded the third-party defendant, and alleged that if the plaintiff had been injured as alleged in the complaint, then the injuries and resulting damages were caused by the third-party defendant.

By notice of motion dated May 8, 2009, the plaintiff moved, inter alia, for summary judgment on the issue of liability. The plaintiff asserted, among other things, that the evidence established as a matter of law that the school district, by Serfaty, was negligent in leaving the plaintiff and the third-party defendant unsupervised in the lab, and that the school district's negligence was the proximate cause of the plaintiff's injuries. In addition to the testimony set forth above, the plaintiff relied on the school district's Faculty Handbook, which provided, among other things, that "[c]lassrooms should never be left unattended" and "[s]tudents should not be left unattended in a classroom," as well as the school district's conclusion that Serfaty's actions constituted failure to properly supervise and a breach of internal rules.

By notice of cross motion dated June 24, 2009, the school district cross-moved for summary judgment dismissing the complaint asserting, inter alia, that it adequately supervised its students. Among the school district's arguments in this regard, it claimed that the plaintiff relied on an incorrect standard. According to the school district, the applicable duty of care was not the "reasonably prudent parent" standard. Rather, the school district asserted that, because the circumstances here involved a voluntary, extracurricular activity, the applicable duty of care was the less-demanding "reasonably prudent person" standard. The school district asserted that the evidence established that it had satisfied this duty of care. Accordingly, the school district contended that it was entitled to summary judgment dismissing the complaint.

In opposition to the plaintiff's motion, the school district asserted, among other things, that there were questions of fact as to the manner in which the fire occurred. In addition to the testimony set forth above, the school district relied upon, inter alia, a Nassau County fire marshal's report. The report stated, in pertinent part,

"The burn and fire patterns present in the room were not consistent with the description of events given by the two (2) students, [the third-party defendant] and NASH, claiming that while attempting to sterilize a flask with the alcohol there was a large flash fire. At the time of the fire the two (2) students were alone in the classroom. Burn patterns within the classroom were more consistent with fire being disbursed/sprayed outward. Several attempts were made by the investigator to ignite the Ethyl Alcohol that was present on the center island workstation by pouring it into a 100 ml. beaker and attempting to ignite with the manual flint striker. All attempts to ignite the alcohol failed."

However, the report also concluded that the fire was accidental, and that its cause was "the accidental Ignition of an Ignitable Liquid."

The school district also asserted that there were issues of fact as to whether the plaintiff's comparative negligence contributed to his injuries.

## The Order Appealed From

In an order dated January 14, 2010, the Supreme Court granted that branch of the plaintiff's motion which was for summary judgment on the issue of liability, and denied the school district's cross motion for summary judgment dismissing the complaint (2010 NY Slip Op 33731[U] [2010]). The Supreme Court concluded that the plaintiff established his prima facie entitlement to judgment as a matter of law. The Supreme Court determined that it was undisputed that Serfaty neglected to supervise the plaintiff and the third-party defendant at the lab when the accident occurred. The Supreme Court further determined that, in opposition to the plaintiff's motion, the school district failed to raise a triable issue of fact. The Supreme Court deemed the school district's assertion that it provided adequate supervision to be unavailing; on the contrary, the Supreme Court concluded that the school district provided no supervision, as Serfaty had left the building. Additionally, although there were different versions of how the events transpired, the Supreme Court concluded that Serfaty had specific notice that there were flammable substances in the lab. Therefore, the Supreme Court also deemed unavailing the school district's argument that any negligence on its part was not the proximate cause of the plaintiff's injuries. Concluding

that the school district failed to raise a triable issue of fact, the Supreme Court granted that branch of the plaintiff's motion which was for summary judgment on the issue of liability, and denied the school district's cross motion.

## Analysis

"A party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of any material issues of fact" (*Napolitano v Suffolk County Dept. of Pub. Works*, 65 AD3d 676, 677 [2009]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). "The failure to make such a prima facie showing requires the denial of the motion regardless of the sufficiency of the opposing papers" (*Napolitano v Suffolk County Dept. of Pub. Works*, 65 AD3d at 677; *see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). If the movant succeeds in making a prima facie showing, the burden then shifts to the nonmoving party to come forward with sufficient evidence to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Yax v Development Team, Inc.*, 67 AD3d 1003, 1004 [2009]). In determining a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party (*see Pearson v Dix McBride, LLC*, 63 AD3d 895, 895 [2009]).

The plaintiff established his prima facie entitlement to judgment as a matter of law on the issue of liability, and, in opposition, the school district failed to raise a triable issue of fact. Moreover, on its cross motion, the school district failed to satisfy its prima facie burden.

As a general matter, "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (*Mirand v City of New York*, 84 NY2d 44, 49 [1994]; *see Hansen v Bath & Tennis Mar. Corp.*, 73 AD3d 699, 700 [2010]; *Tanenbaum v Minnesauke Elementary School*, 73 AD3d 743, 744 [2010]; *Armellino v Thomase*, 72 AD3d 849, 849 [2010]). "Schools are not insurers of safety, however, for they cannot reasonably be expected to continuously supervise and control all movements and activities of students; therefore, schools are not to be held liable 'for every thoughtless or careless act by which one pupil may injure another' " (*Mirand v City of New York*, 84 NY2d at 49, quoting *Lawes v Board of*

*Educ. of City of N.Y.*, 16 NY2d 302, 306 [1965]; *Armellino v Thomase*, 72 AD3d at 849-850; *Paca v City of New York*, 51 AD3d 991, 992 [2008]; *De Los Santos v New York City Dept. of Educ.*, 42 AD3d 422, 422 [2007]). " '[A] teacher owes it to his [or her] charges to exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances' " (*Mirand v City of New York*, 84 NY2d at 49, quoting *Hoose v Drumm*, 281 NY 54, 57-58 [1939]; *see Swan v Town of Brookhaven*, 32 AD3d 1012, 1013 [2006]; *Doe v Orange-Ulster Bd. of Coop. Educ. Servs.*, 4 AD3d 387, 388 [2004]). "The duty owed derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians" (*Mirand v City of New York*, 84 NY2d at 49).

Since the duty owed is derived from the school's assumption of custody of and control over the students, in place of parents and guardians, "the school's 'duty to protect its students from negligence is coextensive with and concomitant to its physical custody and control over its students' and . . . '[t]herefore, once students leave their school's orbit of authority, parents are free to resume custodial control and the school's custodial duty ceases' " (*Hansen v Bath & Tennis Mar. Corp.*, 73 AD3d at 701, quoting *Banks v New York City Dept. of Educ.*, 70 AD3d 988, 990 [2010]). Thus, as we stated recently, "[a]lthough during school hours the standard is that of the reasonably prudent parent, a lesser standard, that of the reasonable and prudent person, is applicable in the context of a student's voluntary participation in an intramural or extracurricular school sport" (*Hansen v Bath & Tennis Mar. Corp.*, 73 AD3d at 701; *see Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 656 [1989]; *Reed v Pawling Cent. School Dist.*, 245 AD2d 281 [1997]; *Barretto v City of New York*, 229 AD2d 214, 218 [1997]).

The school district urges us to conclude that the less demanding "reasonably prudent person" standard applies to the circumstances of this case. The school district emphasizes, among other things, that the accident occurred after the high school's classes were formally over for the day, and that the program in which the third-party defendant was participating was not a required class, as such, but one which required students wishing to participate to apply and qualify for admission.

■ We disagree with the school district's conclusion that these facts rendered the program an extracurricular activity to which the less rigorous "reasonably prudent person" standard ap-

plied. The SRP was an academic class, for which the participants would receive a grade. It was not in any sense an "intramural or extracurricular school sport," which is the context in which the lower standard has generally been found to apply (*Hansen v Bath & Tennis Mar. Corp.*, 73 AD3d at 701; *see Benitez v New York City Bd. of Educ.*, 73 NY2d at 656 [lower standard applicable where injury occurred during "wholly voluntary participation in intramural, interscholastic and other school-sponsored extracurricular athletic endeavors"]; *Reed v Pawling Cent. School Dist.*, 245 AD2d at 281 [lower standard applicable where injury occurred during "voluntary participation in an intramural or extracurricular school sport"]; *Barretto v City of New York*, 229 AD2d at 218 [lower standard applicable where injury occurred during "intramural, interscholastic and other school-sponsored extracurricular athletic endeavors"]).

Additionally, while the accident occurred following the end of formal classes for the day, the SRP was allotted a time period and was contained in the third-party defendant's class schedule like any other class. Thus, under the particular circumstances presented here, the mere fact that the accident occurred following the formal end of classes for the day is without legal significance.

Moreover, the activity at issue here was a graded academic pursuit conducted on school premises. Conversely, in *Hansen*, upon which the school district relies, the plaintiff was injured at a spaghetti dinner held off school premises (*see Hansen v Bath & Tennis Mar. Corp.*, 73 AD3d at 699-700). The plaintiff in *Hansen* volunteered to assist at the dinner as a member of her school's Rotary Interact Club, which performed community service in conjunction with a local Rotary Club (*id.* at 699). Thus, in *Hansen*, the activity at issue was not an academic class, was not graded, and took place off school premises (*id.* at 699-700). We also note that our determination in *Hansen* was based solely on lack of foreseeability, and we did not expressly state which, if either, standard of care was applicable to the circumstances therein (*id.* at 700-701). Rather, we simply set forth both standards of care described above, noting that the less exacting "reasonably prudent person" standard applied "in the context of a student's voluntary participation in an intramural or extracurricular school sport" (*id.* at 701). We then assumed, for the consideration of the case, that the defendant Westhampton Beach Union Free School District owed a duty of care to the students participating in the event, and proceeded to reach the

conclusion that the manner in which the accident occurred was not foreseeable (*id.*).

Here, we also assign no significance to the fact that the plaintiff was not participating in the particular project at issue at the time of the accident. Like the third-party defendant, the plaintiff was enrolled in the SRP, for which the third-party defendant was working on a project. The plaintiff accompanied the third-party defendant to the lab to "keep him company." Upon arriving at the lab, Serfaty, who oversaw the SRP, allowed both students to enter the lab and remain there. Indeed, as the plaintiff observes, Serfaty actually asked the plaintiff to perform cleaning tasks as long as he was going to be in the lab. Accordingly, the fact that the plaintiff was not performing work on a project for the SRP at the time is without legal import. He remained a student enrolled in the SRP and in the high school's charge to whom the high school owed a duty of adequate supervision, and to whom the high school would remain liable for "foreseeable injuries proximately related to the absence of adequate supervision" (*Mirand v City of New York*, 84 NY2d at 49).

Thus, we conclude that the applicable duty of care owed to the plaintiff by the school district was " 'to exercise such care . . . as a parent of ordinary prudence would observe in comparable circumstances' " (*id.*, quoting *Hoose v Drumm*, 281 NY at 58; *see Swan v Town of Brookhaven*, 32 AD3d at 1013; *Doe v Orange-Ulster Bd. of Coop. Educ. Servs.*, 4 AD3d at 388). This is so notwithstanding the fact that the accident took place after the formal end of classes for the day.

■ With regard to the issue of whether the school district breached the applicable duty of care, the evidence establishes that Serfaty, and, by extension, the school district, exercised no supervision whatsoever over the plaintiff and the third-party defendant at the relevant time. While the third-party defendant was working on his project and the plaintiff was nearby, Serfaty left the premises, leaving the two students unattended in the lab. Thus, upon her departure, and at the time of the accident, the students were completely unsupervised. Accordingly, the conclusion is inescapable that the school district, by Serfaty, breached its duty.

Of course, to impose liability upon the school district based on inadequate supervision, the injuries to the plaintiff must have been foreseeable and "proximately related to the absence of adequate supervision" (*Mirand v City of New York*, 84 NY2d at 49). Relatedly,

"[t]o establish a breach of the duty to provide adequate supervision in a case involving injuries caused by the acts of fellow students, a plaintiff must show that school authorities 'had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated' " (*Doe v Department of Educ. of City of N.Y.*, 54 AD3d 352, 353 [2008], quoting *Mirand v City of New York*, 84 NY2d at 49; *see Brandy B. v Eden Cent. School Dist.*, 15 NY3d 297, 302 [2010]).

" '[S]chool personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students daily' " (*Armellino v Thomase*, 72 AD3d 849, 850 [2010], quoting *Mirand v City of New York*, 84 NY2d at 49). "Thus, a student's injury which is caused by 'the impulsive, unanticipated act of a fellow student ordinarily will not give rise to a finding of negligence absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act' " (*Armellino v Thomase*, 72 AD3d at 850, quoting *Mirand v City of New York*, 84 NY2d at 49).

█ Here, the plaintiff's injuries were foreseeable, and they were proximately related to the absence of adequate supervision. It is undisputed that the third-party defendant spoke with Serfaty about the sterilization procedure he proposed to implement, involving the use of ethyl alcohol. According to Serfaty, the third-party defendant questioned her about this method repeatedly. Serfaty testified at her deposition that she instructed the third-party defendant that he was never to use ethyl alcohol in such a manner. However, she also testified unequivocally that she was aware of the fact that the third-party defendant was using ethyl alcohol. Meanwhile, according to the third-party defendant, both Serfaty and another individual had informed him of the procedure of sterilizing with ethyl alcohol. According to the third-party defendant, Serfaty instructed him before he ever began working on the project at issue to use ethyl alcohol in this manner. He testified that he used this procedure "all the time." Moreover, in addition to the facts that Serfaty at the very least knew that there was ethyl alcohol present in the lab, that the third-party defendant was using ethyl alcohol in some manner, and that the third-party defendant proposed using ethyl alcohol in the manner described, Serfaty acknowledges that she was aware of the presence of spark lighters in the lab, and that one may have been "laying around." Based on the facts known

to Serfaty at the time, she was on notice of the dangerous conduct which would ultimately cause the plaintiff's injury, and the third-party defendant's actions were foreseeable.

■ In opposition to the plaintiff's prima facie showing of entitlement to judgment as a matter of law on the issue of liability, the school district failed to raise a triable issue of fact (*see generally Alvarez v Prospect Hosp.*, 68 NY2d at 324). The school district heavily emphasizes, in addition to its contentions as set forth above, its assertion that the third-party defendant's activation of the spark lighter occurred so quickly, and without warning, such that, even if present, Serfaty could not have prevented the conflagration. It is true that " 'where an accident occurs in so short a span of time that even the most intense supervision could not have prevented it, any lack of supervision is not the proximate cause of the injury and summary judgment in favor of the . . . defendants is warranted' " (*Luciano v Our Lady of Sorrows School*, 79 AD3d 705, 705 [2010], quoting *Convey v City of Rye School Dist.*, 271 AD2d 154, 160 [2000]; *see Tanenbaum v Minnesauke Elementary School*, 73 AD3d 743, 744 [2010]). Were the third-party defendant's activation of the spark lighter the extent of his dangerous conduct, it may be the case that even the most intensive supervision could not have altered the outcome. However, the third-party defendant's dangerous conduct commenced with his use of the ethyl alcohol. There is no support in the record for the conclusion that the third-party defendant's use of the ethyl alcohol prior to his ignition thereof by the spark lighter occurred in so short a span of time that no amount of supervision on Serfaty's part could have prevented the explosion. Indeed, Serfaty testified that, if she had been present in the classroom, she would not have permitted the third-party defendant to use ethyl alcohol in the manner he proposed.

Accordingly, the plaintiff established his prima facie entitlement to judgment as a matter of law on the issue of liability by demonstrating that the school district breached its duty to exercise the level of care as would a parent of ordinary prudence in comparable circumstances, and that this failure was a proximate cause of the plaintiff's injuries. In opposition, the school district failed to raise a triable issue of fact. For the same reason, on the school district's cross motion, it failed to meet its initial burden of establishing its prima facie entitlement to judgment as a matter of law dismissing the complaint.

### Conclusion

The Supreme Court properly granted that branch of the plaintiff's motion which was for summary judgment on the issue of liability, and properly denied the defendant's cross motion for summary judgment dismissing the complaint. Accordingly, the order is affirmed.

COVELLO, J.P., BELEN and LOTT, JJ., concur.

Ordered that the order is affirmed, with costs.