J.A. v Mandy Assoc. LLC. (2024 NY Slip Op 24194)

[*1]

J.A. v Mandy Assoc. LLC.

2024 NY Slip Op 24194

Decided on July 11, 2024

Supreme Court, Bronx County

Hummel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 11, 2024
Supreme Court, Bronx County

J.A. an infant by her father and natural guardian 
 J.A., and J.A., individually, Plaintiffs,

against
Mandy Associates LLC. and THE MORGAN GROUP LLC., Defendants.

Index No. 27470/2018E

Plaintiffs
MICHAEL STEWART FRANKEL Firm Name: THE FRANKEL LAW FIRM Address: 100 Church Street 8th Floor, New York, NY 10007 Phone: (212) 888-5100 Service E-mail: mfrankel@frankellawfirm.com Other E-mails: 
rfrankel@frankellawfirm.com frankellawfirm@icloud.com
Defendants
STANLEY GOOS Firm Name: HARRIS BEACH PLLC Address: 100 Wall Street, New York, NY 10005 Phone: 212-687-0100 Service E-mail: hbtower@harrisbeach.com Other E-mails: 
efilings@harrisbeach.com sgoos@harrisbeach.com

Veronica G. Hummel, J.

In accordance with CPLR 2219 (a), the decision herein is made upon consideration of all the papers filed by the parties in NYSCEF in connection with the motion [Mot. Seq. 3] of plaintiffs J.A. an infant by her father and natural guardian J.A., and J.A., individually, made pursuant to CPLR 3212, for an order granting plaintiffs summary judgment as against defendant MANDY ASSOCIATES LLC. ("defendant or Mandy") on issues of liability and causation on the first and second causes of action. Defendant opposes the motion.
This personal injury action is based on claims that the infant plaintiff suffered lead poisoning and resulting personal injuries while residing at defendants' property. The First Cause of Action in the complaint alleges "regulatory liability pursuant to the turnover provision of [*2]Local Law 1 of 2004 [NYC Administrative Code §27-2056.8] ("the Turnover Provision"). The Second Cause of Action is founded on "regulatory liability under Local Law 1" based on Juarez v. Wavecrest Mgt. Team, 88 NY2d 628 (1996)) ("the Juarez Decision").
The undisputed facts are as follows:
The family of plaintiff J.A. leased Apartment 34 ("the Apartment") in a multiple dwelling building located at 2593 Grand Concourse in the Bronx ("the Building"). It is undisputed that defendant owned the Building and the Building was constructed prior to January 1, 1960. 
On December 30, 2015, the previous tenant of the Apartment vacated the premises. A month later, plaintiffs' tenancy commenced on February 1, 2016. Defendant had notice that plaintiffs' family included a child of less than seven years of age and that the child resided in the Apartment. 
At some point prior to the infant plaintiff's diagnosis of lead poisoning, defendant had actual knowledge that another apartment in the Building had tested positive for lead and/or lead dust. At deposition, the defense's witness testified that whenever defendant purchased a pre-1960 multiple dwelling property in New York City like the Building, defendant assumed that the purchased property contained lead-based paint.
On March 9, 2018, the infant plaintiff presented to the pediatrician with complaints of abdominal pain. The infant plaintiff was diagnosed with an elevated blood lead level of 33 æg/dL. 
Six days later, on March 15, 2018, the New York City Department of Health, and Mental Hygiene ("NYC Health Department") inspected the Apartment and determined that 38 locations within the Apartment were positive for lead paint. On March 27, 2018, the NYC Health Department issued a Commissioner Order to Abate Nuisance which declared that the conditions in the Apartment were a lead hazard and a nuisance. Defendant did not object to the NYC Health Department's determination. Thereafter, defendant signed a Housing Court consent order dated June 26, 2018, conceding there were multiple class "C" lead violations inside the Apartment. Analysis
Plaintiffs move for summary judgment on the issues of "liability and causation" only as against defendant Mandy. Plaintiffs argue that there are no genuine issues of fact as to defendant's liability under the strict liability imposed by the Turnover Provision of Local Law 1 of 2004 and under Local Law 1 based on the Juarez Decision and its progeny. Nor, plaintiffs argue, is there an issue of fact as to causation or the fact that the infant plaintiff suffered an injury-in-fact as the result of defendant's negligence. Plaintiffs specify that the Second Cause of Action seeks damages under the classical Juarez Decision common law framework, separate and apart from the strict liability sought under the Turnover Provision as alleged in the First Cause of Action.
In opposition, defendant contends that there are issues of fact as to defendant's compliance with the Turnover Provision and, in any event, the Turnover Provision does not create a private, strict liability cause of action for personal injuries. Furthermore, defendant argues that there is a question of fact was to whether defendant was negligent in maintaining the Apartment under Local Law 1 and the common law set forth in the Juarez Decision. In any event, defendant asserts that the submitted conflicting medical expert evidence generates issues [*3]of fact as to the specific and general causation elements of the infant plaintiff's claimed injuries. 
Summary judgment is a drastic remedy that deprives a litigant of his or her day in court, and it should be granted only where the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact. see Alvarez v. Prospect Hosp., 68 NY2d 320 (1986); Andre v. Pomeroy, 35 N.Y2.d 361, 364 (1974). 
To grant summary judgment, it must clearly appear that no material and triable issue of fact is presented. Issue finding, rather than issue determination, is the key to the procedure. see Matter of Suffolk County Dept. of Social Servs. v. James M., 83 NY2d 178 (1994); Sillman v. Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 (1957). In making this determination, the court must view the evidence in the light most favorable to the party opposing the motion and must give that party the benefit of every favorable inference which can be drawn from the evidence. see De Lourdes Torres v. Jones, 26 NY3d 742, 763 (2016); William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh, 22 NY3d 470, 475 (2013); Nash v. Port Washington Union Free School Dist., 83 AD3d 136, 146 (2d Dep't 2011). 
To resolve the motion, an examination is required of the common law principles applicable to lead poisoning cases and of the relationship between those principles and Local Law 1. The seminal case setting forth the principles that govern negligence cases based on lead poisoning under Local Law 1 is the Court of Appeals decision in Juarez v. Wavecrest Mgt. Team, Ltd, 88 NY2d 628 (1996). As for Local Law 1, it was adopted by the New York City Council in 1982, and thereafter amended to include the Turnover Provision in 2004. see S.T. v. 1727-29 LLC, 189 AD3d 10 (1st Dep't 2020); Administrative Code of City of NY (Article 14) § 27-2056.8. 
As stated, the Juarez Decision sets forth the foundational common law principles applicable to tort actions involving personal injuries allegedly caused by exposure to lead paint in multiple dwellings.[FN1]
In the Juarez decision, the Court of Appeals noted that it was the "first opportunity to consider the liability of a landlord who has allegedly failed to comply with the lead abatement provision of the Administrative Code of the City of New York." Juarez v. Wavecrest Mgt. Team, Ltd, supra. That provision, Local Law 1, requires the owner of a multiple dwelling to "remove or cover" paint containing specified hazardous levels of lead in any apartment in which a child seven years of age or younger resides. Id.; Administrative Code of City of NY § §27-2056.3; 27-2056.18.[FN2]

The Court of Appeals noted that a landlord may be held liable for an injury caused by a defective or dangerous condition upon the leased premises if the landlord is under a statutory or contractual duty to maintain the premises in repair and reserves the right to enter for inspection and repair. Juarez v. Wavecrest Mgt. Team, Ltd, supra. A plaintiff must also demonstrate that the landlord had actual or constructive notice of the dangerous condition and a reasonable [*4]opportunity to fix it. Id. 
As for Local Law 1, it imposes a duty on landlords to ameliorate lead paint-based hazards in buildings constructed prior to January 1, 1960, if they have actual or constructive notice that a child less than seven years of age resides in the leased premises. Further, Local Law 1 gives landlords the right to enter a dwelling unit occupied by such children for the purpose of inspecting and abating lead paint. Juarez v. Wavecrest Mgt. Team, Ltd, supra. The right of entry conferred by Local Law 1 gives a landlord constructive notice of any lead paint within an apartment that is occupied by a child of the specified age. Id. 
The Court of Appeals specifically held, however, that Local Law 1 does not impose absolute liability under which no excuse is recognized. Rather, it imposes a standard of reasonableness. Hence to avoid common law liability, the landlord must prove that even though the landlord violated Local Law 1, the landlord acted reasonably under the circumstances. That is, the landlord must demonstrate that the lead paint hazard existed despite the landlord's diligent and reasonable efforts to prevent it. Juarez v. Wavecrest Mgt. Team, Ltd, supra; S. T. v. 1727-29 LLC., supra. The issue of reasonableness is often a jury question. Juarez v. Wavecrest Mgt. Team, Ltd, supra; LM v. New York City Housing Authority, 171 AD3d 1154 (2d Dep't 2019); Hill v. Lorac House Inc., 135 AD3d 659 (1st Dep't 2016); Munoz v. Puretz, 301 AD2d 382 (1st Dep't 2003); compare, S. T. v. 1727-29 LLC., supra; Velez v. Stopanjac, 273 AD2d 22 (1st Dep't 2000).
Therefore, under the common law principles set forth in the Juarez Decision and its progeny, to prevail on a claim against a landlord for breaching the duty imposed by Local Law 1, a plaintiff must establish: (1) the leased premises is in a building constructed prior to January 1, 1960; (2) the landlord had actual or constructive notice that an infant less than seven years of age resided in the premises; (3) the landlord failed to take reasonable remedial steps to abate the lead; and (4) the lead-based hazard caused the infant plaintiff's injuries. Juarez v. Wavecrest Mgt. Team, Ltd, supra; see E.S. v. Windsor Owners Corp., 224 AD3d 40, 44 (1st Dep't 2024); S.T. v. 1727-29 LLC, supra. Since there is no absolute liability under Local Law 1, to avoid liability a landlord must prove that even though it violated Local Law 1, it acted reasonably under the circumstances and the hazard exists despite the landlord's diligent and reasonable efforts to prevent it. Juarez v. Wavecrest Mgt. Team, Ltd, supra; S.T. v. 1727-29 LLC., supra; Hill v. Lorac House Inc., supra; Munoz v. Puretz, supra. 
Hence, the Court of Appeals in the Juarez Decision held that Local Law 1 did not eliminate the foundational common law elements of a negligence cause of action such as notice and reasonableness. This standard has been repeatedly upheld in subsequent decisions. see LM v. New York City Housing Authority, supra; Hill v. Lorac House Inc., supra; S. T. v. 1727-29 LLC., supra; Velez v. Stopanjac, supra. 
As for Local Law 1, it was enacted by the New York City Council in 1982 and thereafter amended in 2004 to include, among other items, the "Turnover Provision". In relevant part, the Turnover Provision (§27-2056.8) provides:
"Violation in a dwelling unit upon turnover.
a. Upon turnover of any dwelling unit in a multiple dwelling erected prior to January 1, 1960 . . . the owner shall within such dwelling unit have the responsibility to:
(1) remediate all lead-based paint hazards and any underlying defects, when such underlying defects exist;
(2) make all bare floors, window sills, and window wells in the dwelling unit smooth and cleanable;
(3) provide for the removal or permanent covering of all lead-based paint on all friction surfaces on all doors and door frames; and
(4) provide for the removal or permanent covering of all lead-based paint on all friction surfaces on all windows, or provide for the installation of replacement window channels or slides on all lead-based painted friction surfaces on all window . . .
c. Any owner who fails to comply with the provisions of subdivision a of this section, or the rules of the department of health and mental hygiene or the department promulgated pursuant to paragraph 3 of subdivision a of section 27-2056.11 as determined by subdivision d-1 of section 27-2056.9 shall be liable for a class C immediately hazardous violation. An owner who is presumed to have failed to comply with the provisions of subdivision a of this section or such rules, pursuant to an audit as provided in section 27-2056.7 or section 27-2056.17, shall be liable for a class B violation and a civil penalty in an amount not to exceed $1500.
In contrast to this provision, other key provisions, §§27-2056.3, 27-2056.4, and 27-2056.5 provide that an owner has a duty to ascertain if a child of applicable age resides in an apartment, and, if a child of applicable age is residing there, the owner then has a duty to conduct inspections and keep the apartment free of lead hazards. Those provisions are aimed to maintain an apartment in which a child resides in a lead-safe condition until a vacancy occurs — at which time the Turnover Provision requires permanent elimination of lead-based paint from all friction surfaces regardless of the presence or absence of an infant.
Hence, the Turnover Provision is fundamentally different from other provisions as it specifically charges an owner of a vacant apartment with the duty to render that unit lead free (or at minimum, lead-safe) regardless of whether there is a child of applicable age residing there. In fact, in contrast to the common law principles set forth in the Juarez Decision and its progeny, the Turnover Provision does not require that the landlord have notice of the presence of a child, the existence of lead paint, or that the landlord be given the chance to remediate before penalties are imposed.
Importantly, while it is true that Local Law 1 was amended in 2004, approximately 8 years after the Juarez Decision, thereby creating the Turnover Provision, in the moving papers plaintiffs concede that "Local Law 1 of 2004 left the Juarez framework intact". In any event, the law is clear that while the Turnover Provision imposes an affirmative duty to abate lead-based hazards in vacant apartments on the owners of pre-1960 multiple dwellings, the amendment does not alter the fundamental common law principles set forth in the Court of Appeals Juarez decision.
The first cause of action alleging "regulatory liability pursuant to the turnover provision of Local Law 1 of 2004 [NYC Administrative Code §27-2056.8] ("the Turnover Provision")
By moving for summary judgment on the First Cause of Action, plaintiffs seek an accelerated judgment as to defendant's alleged strict liability under the Turnover Provision [NYSCEF No. 109, p.4]. Plaintiffs argue that the Turnover Provision, with its absence of any requirement of notice of a child in the relevant apartment in contrast to other provisions of Local [*5]Law 1 of 2004, "makes it obvious that there was no intended notice requirement under the Turnover Provision" and the provision therefore creates a private cause of action based on strict liability as against a violating owner. [NYSCEF No. 77, p.9].
Private cause of action
Before addressing whether defendant can be held liable under the Turnover Provision, it is necessary to examine whether the provision creates a private right of action for civil remedies. As outlined above, the Turnover Provision was enacted by the New York City Council, not the state legislature. The New York City Council's authority is broad enough to sometimes include the creation of a private cause of action. Bracker v. Cohen, 204 AD2d 115 (1st Dep't 1994). Of note, a local law cannot prohibit what would be permissible under State law nor impose prerequisites or additional restrictions on rights granted under State law so as to inhibit the operation of the State's general laws. Id.
Although the City Council has the power to create a private right of action — that alone does not mean that it intended to do so when it enacted the Turnover Provision. To answer that question, the analysis begins, of course, with the statute itself. Burns Jackson Miller Summit & Spitzer v. Lidner, 59 NY2d 314 (1983). Here, there is no express grant of an additional private cause of action in the Turnover Provision, and the plain language of a statute guides its interpretation. Micheli &Shel, LLC. v. Grubhub, Inc., 2023 WL 2390540 (S.D.NY 2023). While the nonexistence of an express right standing alone is not determinative (Konkur v. Utica Academy of Science Charter School, 38 NY3d 38 (2022), here plaintiffs concede that the statute does not expressly create a private cause of action. see Micheli &Shel, LLC. v. Grubhub, Inc., supra.
Furthermore, where, as here, a statute does not explicitly provide for a private right of action, recovery may only be had under the statute if a legislative intent to create such a right of action may fairly be implied in the statutory provision and the statute's legislative history. Konkur v. Utica Atica Academy of Science Charter School, supra; Ortiz v. Ciox Health LLC., 37 NY3d 353 (2021); Air-Sea Packing Group, Inc. v. Applied Underwriters, Inc., 2024 NY Slip Op. 02032 (2d Dep't 2024). The court applies a three-factor test to determine whether the legislative intent favors an implied right: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme". Konkur v. Utica Atica Academy of Science Charter School, supra.
This test requires that all three factors must be satisfied before an implied private right of action will be recognized. Id. The third factor, however, is the most important and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others because it demonstrates that the legislature considered and decided what avenues of relief were appropriate. Konkur v. Utica Academy of Science Charter School, supra; Ortiz v. Ciox Health LLC., supra. The Court of Appeals has stated that the legislative body has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the body passing the legislation. Konkur v. Utica Academy [*6]of Science Charter School, supra.
Applying these principles to the Turnover Provision, as for the third factor, a private cause of action is inconsistent with express language and overall design of the provision as the City Council specifically considered and expressly provided for unique enforcement mechanisms within the provision itself. The Turnover Provision specifies that the enforcement of its directives is by the New York Department of Health and by the imposition of Class C and B violations and civil fines. The implied existence of a private cause of action is incompatible and would not coalesce smoothly with this existing statutory enforcement scheme. contrast, Maimonides Med. Ctr. v. First United Am. Life Ins. Co., 116 AD3d 207, 211 (2d Dep't 2014). Put simply, the City Council's decision to create enforcement mechanisms other than an express private right of action is evidence that the Council did not intend to create private cause of action for civil damages. Ortiz v. Ciox Health LLC., supra (observing that the presence of alternative enforcement mechanisms is frequently determinative); Cruz v. TD Bank, N.A., 22 NY3d 61, 71 (2013). As such, the regulation does not afford plaintiffs a private right of action because, regardless of whether the first two criteria of the test can be satisfied, the third factor is not met. Id; Ortiz v. Ciox Health LLC., supra.
Importantly, as defendant notes, and plaintiffs do not dispute, the legislative history of the law is devoid of any suggestion that the City Council, assuming it was so empowered, ever intended to create a private right of action for violations of the Turnover Provision. Nor do plaintiffs cite any cases, legislative history, or other sources that show that the creation of a new private right of action was the intent of the passing of the Turnover Provision. see Konkur v. Utica Academy of Science Charter School, supra. Hence, the Court concludes, that a legislative intent to create such a private right of action is not fairly implied in the statutory provisions and the legislative history. Ortiz v. Ciox Health, LLC., supra.
Strict Liability Nature
Moreover, a private cause of action founded on strict liability may not be created by the Turnover Provision, as such strict liability would directly contradict the Juarez Decision and its progeny which set forth the governing principles of common law negligence in lead paint cases. It is long been held that that, for tort purposes, even a specific duty provision in the Administrative Code must be treated as any other local enactment if its status is that of a local law. The specific nature of the duty imposed, however, cannot ameliorate the rules expressed in common law under a Court of Appeals decision as only an enactment of the Legislature can alter New York State's common law of negligence. Elliott v. City of New York, 95 NY2d 730 (2001). Hence, as a rule, violation of a State statute that imposes a specific duty constitutes negligence per se, or may even create absolute liability and by contrast, violation of a municipal ordinance constitutes only evidence of negligence. Id.
Here, a private cause of action based on the strict liability nature of the Turnover Provision, as proposed by plaintiffs, would directly contradict the foundational common law negligence principles set forth in the Juarez Decision. As set forth above, it has been repeatedly held that Local Law 1 does not impose absolute liability and common law principles impose a standard of notice and reasonableness.
In contrast, the Turnover Provision does not include a requirement of notice of a child in the residence, notice to the landlord of the existence of lead paint, or an examination of the reasonableness of remediation in order to impose penalties, which are elements that are [*7]foundational to the Juarez Decision. Hence, under the Juarez Decision, there remains common law notice requirements and other elements that must be satisfied under State law to prove a negligence cause of action. To reach the conclusion advocated by plaintiffs would create a strict liability situation under the Turnover Provision which directly contradicts that finding the Court of Appeals decision in Juarez. Finding a private strict liability cause of action under the Turnover Provision therefore would be inconsistent with State law.
Furthermore, this conclusion is congruent with the decision in Matter of Rent Stabilization of N.Y.C., Inc., v. Miller, 15 AD3d 194 (1st Dep't 2005). In that decision, the First Department held that the City Council did not exceed its authority in legislating the presumption under the Local Law 1 that a pre-1960 building contains lead paint because the Local Law 1 presumption was "merely evidentiary and does not impose absolute liability". Matter of Rent Stabilization of N.Y.C., Inc., v. Miller, supra; see also Juarez v. Wavecrest Mgt. Team, Ltd, supra; Elliott v. City of New York, supra.
To the extent that plaintiffs rely on the case of S.T. v. 1727-29 LLC, 189 AD3d 10, 16 (1st Dep't 2020) ("S.T. v. 1727"), the reliance is misplaced. The court in S.T. v. 1727 does not conclude that Local Law 1 creates a private right of action, but instead holds that the relevant regulation establishes a standard of reasonable care for lead abatement efforts. A failure to comply with the law may establish that a landlord failed to perform reasonable steps to remediate lead paint — the element of breach under premises liability — but it does not give rise to a private strict liability right of action. see S.T. v. 1727-29 LLC, supra.
Plaintiff cites to D.P. v. Ann-Gur Realty Corporation et al., Bronx County Index No. 35056/2009 as an example of a case where summary judgment was granted for plaintiff based upon a violation of the Turnover Provision. However, in Ann-Gur the court concluded that the failure to comply with the Turnover Provision was relevant to question of whether a landlord engaged in reasonable lead abatement efforts. The Ann-Gur court did not find that the Turnover Provision created a new private right of action or imposed strict liability.
Liability in this case, if any exists, therefore sounds in common law general premises liability, and not under some form of strict liability private right cause of action created by the Turnover Provision. see Juarez v. Wavecrest Mgt. Team, supra. Accordingly, the part of the motion that seeks summary judgment on the First Cause of Action is denied.
The Second Cause of Action founded in common law on "regulatory liability under Local Law 1".[FN3]
As stated previously, to prevail on a negligence claim against a landlord for breaching the duty of care imposed by Local Law 1 and the Juarez Decision under common law, a plaintiff must establish: (1) the leased premises is in a building constructed prior to January 1, 1960; (2) the landlord had actual or constructive notice that an infant less than seven years of age resided in the premises; (3) the landlord failed to take reasonable remedial steps to abate the lead; and (4) the lead-based hazard caused the infant plaintiff's injuries. Juarez v. Wavecrest Mgt. Team, [*8]supra; E.S. v. Windsor Owners Corp., 224 AD3d 40, 44 (1st Dept 2024); S.T. v. 1727-29 LLC, supra.
Based on the moving papers, plaintiffs make a prima facie showing that: the Building was constructed prior to January 1, 1960; the Apartment contained hazardous levels of lead in 38 locations; defendant had actual notice that a child less than seven years of age resided in the Apartment; defendant failed to take remedial steps to abate the peeling lead paint inside plaintiffs' apartment; and lead poisoning caused the infant plaintiff to suffer a high lead level and resultant injuries. 
As for the causation element, in Parker v. Mobil Oil Corp., 7 NY3d 434 (2006), the Court of Appeals set forth the requirements that an expert opinion must meet with respect to causation in a toxic tort case. Contrary to plaintiffs' contention, Parker has been applied in lead paint cases. see Brown v. Webb-Weber, 161 AD3d 523, 524 (1st Dep't 2018).[FN4]
In any event, based on the moving papers on this motion for summary judgment, plaintiffs met their prima facie burden under Parker.
Thus, the burden shifted to defendant to raise a triable issue of fact. see Alvarez v. Prospect Hosp., supra. In opposition, defendant does not dispute that the Building was constructed prior to January 1, 1960, and that the landlord had actual and constructive notice that an infant less than seven years of age resided in the Apartment. 
Defendant attempts to create questions of fact as to the remaining two elements. Specially, the landlord argues that a question of fact exists as to whether the landlord failed to take reasonable remedial steps to abate the lead and, concerning causation, whether the lead-based hazard caused the infant plaintiff to suffer an injury. Juarez v. Wavecrest Mgt. Team, Ltd, supra; see also Bygrave v. New York City Housing Authority, 65 AD3d 842, 847 (1st Dep't 2009). 
As for the reasonableness of remediation, however, defendant's evidence is insufficient to generate a question of fact as a matter of law. Of note, the defense witness acknowledged that no records or independent recollection existed to prove the remediation required by the Turnover Provision was ever completed before plaintiffs moved into the Apartment, and the presence of significant lead paint after the tendency began is conceded. 
To the extent that defendant argues that the testimony of the Superintendent raises a triable issue of fact as to reasonableness of the remedial actions, the argument lacks merit. The Superintendent testified that prior to renting an apartment to a new tenant, the practice was for the building manager to inspect for lead with an outside contractor. If a lead hazard was discovered, the contractor would perform remediation work.
The Superintendent, however, did not have any personal knowledge of whether this process was completed with regards to the relevant apartment and could not state that in fact remedial work was ever done. Nor did the Superintendent testify as to the reasonableness of the outside contractor's methods or what those methods were. The witness's testimony is therefore pure speculation and speculative testimony is not sufficient to raise a triable issue of fact. See Santana v. Kardash Realty Corp., 158 AD3d 595 (1st Dep't 2018); Smith v. Costco Wholesale Corp., 50 AD3d 499, 501 (1st Dept 2008).
While no issue of fact exists as to whether defendant acted reasonably, defendant raises an issue of fact as to causation, in sum and substance, whether the lead-based hazard caused the infant plaintiff to suffer an injury. In the moving papers, plaintiffs contend that lead poisoning (defined as an elevated blood lead level) and impeded "heme synthesis" are per se actionable injuries a matter of law. With respect to heme synthesis, plaintiffs rely on Vega v. S.S.A. Props., Inc., 13 AD3d 298 (1st Dept 2004) and Campbell v. Metropolitan Property and Casualty Insurance Co., 239 F.3d 179, 182 (2d Cir 2001) to support their proposition. With respect to lead poisoning (also referred to as plumbism) plaintiffs rely on Wynn v. T.R.I.P., 296 AD2d 176 (3d Dept 2002) in the argument.
As for the injury based on heme synthesis, plaintiffs' reliance on Vega is misplaced as the First Department did not hold that heme synthesis inhibition alone constituted an injury as a matter of law. see Vega v. S.S.A. Props., Inc., supra. Similarly, Campbell, a Federal Circuit Court decision, does not support plaintiffs' contention as the court determined that heme inhibition was a "bodily injury" within the meaning of an insurance policy, not a state law negligence action. In any event, the decisions of Federal circuit courts are not binding on state courts in cases involving non-Federal questions. See generally, Conergics Corp. v. Mid-West Conveyor Co., 144 AD3d 516 (1st Dept 2016); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McLeod, 208 AD2d 81, 83 (1st Dept 1995).
With respect to lead poisoning (also referred to as plumbism) and the decision in Wynn v. T.R.I.P., 296 AD2d 176 (3d Dept 2002), the Third Department's holding that "lead poisoning itself is an actionable injury" is in direct contradiction with the First Department's rulings that to recover, a plaintiff must prove that they suffered injuries as a result of lead poisoning. E.S. v. Windsor Owners Corp., 224 AD3d 40, 44 (1st Dep't 2024); see also S.T. v. 1727-29 LLC, 189 AD3d 10, 16 (1st Dep't 2020). This Court is bound by the rulings of the Appellate Division, First Department.
In fact, as recently as January 2024, the Appellate Division First Department has maintained that in lead paint cases such as this:
"A plaintiff demonstrates prima facie liability by showing (1) that the subject premises were built before January 1, 1960; (2) that plaintiff suffered injuries from lead poisoning from ingesting lead-based paint in the premises; (3) that plaintiff was seven years old or under when exposed to the lead-based paint; and (4) that the owner had actual or constructive notice that the plaintiff was seven years old or younger while residing in the premises." E.S. v. Windsor Owners Corp., supra (emphasis added). Thus, to recover, a plaintiff must establish more than plaintiff has elevated lead levels. Plaintiff must also show plaintiff suffered injuries because of that lead poisoning. Id.; Bygone v. New York City Housing Authority, 65 AD3d 842 (1st Dep't 2009) (a plaintiff must still prove that he or she developed physical symptoms as a result of having been exposed to lead paint); Veloz v. Refika Realty Co., 38 A.D3d 299 (1st Dep't 2007). Put another way, an elevated level of lead alone without evidence of a resulting injury is not actionable. see Bygrave v. New York City Housing Authority supra. 
Hence, in denying plaintiffs' motion for summary judgment, the First Department held in S.T. v. 1727-29 LLC, supra that:
"While no issue of fact exists as to whether defendants acted reasonably, 
 defendants have raised an issue of fact as to causation. Plaintiffs highlight that defendants do not contend that S.T. was exposed to lead outside of the apartment. While that is true, defendants' medical expert opined that S.T.'s injuries were not caused by lead exposure. Contrary to plaintiffs' argument, the medical expert did not contest the extent of plaintiffs' injuries. Rather, the expert contested whether S.T. sustained any injury at all as a result of his lead poisoning" (emphasis added).
Based on the defense's expert opinion, defendant raises triable issues of fact as to whether the infant plaintiff suffered substantial injuries from the lead poisoning. see Veloz v. Refika Realty Co., supra. Specifically, defendant's expert refutes plaintiff's experts' medical conclusions and finds that plaintiff suffers from no functional disability. The defense expert also opines that plaintiff's abdominal complaints, headache complaints, and the existence of white matter lesions are unrelated to lead exposure. In addition, the defense expert raises a question of fact as to whether the infant's cognitive test results are indicative of brain dysfunction.[FN5]

Accordingly, the issue of causation and injury remain for the jury to resolve. Hill v. Lorac House, Inc., supra; Munoz v. Puretz, supra; compare Velez v. Stopanjac, supra. Under the circumstances presented in this case, much like those in S.T. v. 1727-29 LLC, 189 AD3d 10 (1st Dep't 2020), the Court must deny plaintiffs' motion for summary judgment on liability even though plaintiffs established a prima facie case that the landlord failed to act reasonably to prevent or remediate the lead paint hazard because causation remains undetermined. Defendant's medical expert's testimony raises an issue of fact regarding proximate causation of the infant plaintiff's injuries and the motion is therefore denied.
The Court has considered the parties' additional contentions not specifically addressed herein. To the extent that any contention was not addressed by the Court, it is hereby denied.
Accordingly, it is hereby
ORDERED that the motion [Mot. Seq. 3] of plaintiffs J.A. an infant by her father and natural guardian J.A., and J.A., individually, made pursuant to CPLR 3212, for an order granting plaintiffs summary judgment as against defendant MANDY ASSOCIATES LLC. ("defendant or Mandy") on issues of liability and causation on the First and Second causes of action is DENIED; and it is further
ORDERED that the Clerk shall mark plaintiff's motion [Mot. Seq. 3] as decided in all court records; and it is further
ORDERED that this action is scheduled for a virtual Pre-Trial settlement conference on August 14, 2024, at 12:30p.m. The link has been sent out. The parties shall appear with authority to discuss settlement and with the clients available by telephone. The attorneys shall be fully familiar with the facts and relevant medical records; armed with a list of potential witnesses and the amounts of any outstanding liens; and knowledgeable as of the details of any settlement negotiations to date.
The foregoing constitutes the Decision and Order of the court.
Dated: July 11, 2024
Bronx, New York
Hon. Veronica G. Hummel, A.S.C.J.

Footnotes

Footnote 1:Local Law 1 and the duty it imposes on landlords applies only within the City of New York. The common law principles of premises liability, however, are applicable throughout the State.

Footnote 2:The City of New York requires that the owner of a multiple dwelling remove or cover paint containing specified hazardous levels of lead in any apartment in which a child of applicable age resides. Administrative Code of City of NY former § 27-2013 [h], is now §§ 27-2056.3, 27-2056.18; LM v. New York City Housing Authority, 171 AD3d 1154 (2d Dep't 2019).

Footnote 3:Plaintiff argues that defendant's strict liability under the Turnover provision as alleged in plaintiffs' First Cause of Action though meritorious, would likely be academic once summary judgment is granted under the Second Cause of action based on the Juarez Decision. NYSCEF No. 109 page 4 footnote 4.

Footnote 4:Plaintiff contends that no New York State appellate court has applied Parker in a child lead poisoning case — that is incorrect.

Footnote 5:Plaintiff's expert opined that the infant's uneven cognitive test results (relatively strong performance on some cognitive tests and poor performance on others) is indicative of brain dysfunction.